*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

HERTZ CORP AND AFFILIATES,

      Petitioner-Appellant,

v

DEPARTMENT OF TREASURY,

      Respondent-Appellee.

UNPUBLISHED
December 22, 2022

No. 359109
Tax Tribunal
LC No. 19-003485-TT

Before: SHAPIRO, P.J., and BORRELLO and YATES, JJ.

PER CURIAM.

In this matter involving a dispute over corporate income tax, petitioner appeals as of right the final opinion and judgment of the Michigan Tax Tribunal (MTT) denying petitioner's motion for summary disposition, denying petitioner's motions for limited discovery and costs, and granting summary disposition in favor of respondent. For the reasons set forth in this opinion, we affirm.

## I. BACKGROUND

On June 6, 2019, respondent issued petitioner a Final Bill for Taxes Due, Final Assessment Number VA2XD3S (Final Assessment VA2XD3S). In this bill, respondent informed petitioner that it owed $1,174,386.99, which consisted of $458,967 tax due, $532,003.45 in penalties, and $183,416.54 in interest. The type of tax was "Corporate Income Tax," and the taxable period was "12/12." According to the bill, it was assessed based on petitioner's underpayments, late payments, late filings, and "deficiency due per previous communication."

In a letter from petitioner's attorney to the State Treasurer, dated July 30, 2019, petitioner responded to Final Assessment VA2XD3S and requested a waiver for reasonable cause for all assessed penalties. The letter explained in relevant part:

> The Taxpayer's carryforwards of tax overpayments from the prior years (2008-2010) has been rescinded by the Department due to a dispute over proper Michigan business tax treatment of nonqualifying vehicle exchanges and new investment in vehicles under IRC Section 1031 for tax years 2008 through 2010.

The denial of these carryforwards have caused the underpayments and not any compliance failure on behalf of the Taxpayer. These tax years (2008-2010 and 2011) are currently pending in informal conference for determination by the Department. Determination in favor of the taxpayer will eliminate all tax due and thus all penalty.

\* \* \*

The Taxpayer's underpayment of estimated CIT [Corporate Income Tax] returns and late payment of CIT due for the Year in Issue were both due to confusion about the use of loss carry forward upon transition from one business tax to another. These facts and circumstances constitute reasonable cause for purposes of waiving the negligence penalty pursuant to Michigan Administrative Rules 205.1012 and 205.1013 and Revenue Administrative Bulletin 2005-3.

On August 2, 2019, petitioner initiated this proceeding in the MTT. In its petition, petitioner challenged the entire deficiency assessed by respondent in Final Assessment VA2XD3S, including interest and penalties, and petitioned for cancellation of Final Assessment VA2XD3S. Petitioner alleged that respondent wrongfully reduced its carryforward of tax overpayments for the 2012 CIT year[1] based on its wrongful elimination of petitioner's carryforward of tax overpayments for the years 2008, 2009, and 2010. Petitioner alleged that respondent had wrongfully denied its "purchases from other firms" deduction and investment tax credit in a March 21, 2018 Final Audit Determination Letter with respect to the tax years 2008, 2009, 2010 at the conclusion of respondent's audit of petitioner's Michigan Business Tax (MBT) returns for those three tax years.[2]

According to the petition, respondent's decision resulted in the elimination of petitioner's carryforwards of tax over payments for the tax years 2008, 2009, and 2010, which in turn resulted in the reduction of petitioner's carryforwards of tax over payments for the tax years 2011 and 2012 and increased petitioner's tax due for those years. Based on the allegedly wrongful eliminations of petitioner's carryforwards of tax over payments for the tax years 2008, 2009, and 2010, respondent issued a notice of additional tax due in the amount of $1,162,899 that also informed petitioner that its carryforward of tax overpayments for the 2012 tax year had been reduced. Subsequently, respondent issued the June 6, 2019 Final Assessment VA2XD3S for the 2012 CIT year for tax due in the amount of $458,967, interest due in the amount of $183,416.54, and penalty due in the amount of $532,003.45.

---

[1] The petition clearly alleged that "[t]he tax year at issue is calendar year 2012."

[2] The record indicates that the corporate entities involved in this case filed MBT returns from 2008-2011 and CIT returns beginning in 2012. It appears that the CIT, MCL 206.601 *et seq.*, replaced the MBT, MCL 208.1101 *et seq.*, for the tax year 2012. See *Int'l Business Machines Corp v Dep't of Treasury*, 496 Mich 642, 648-650; 852 NW2d 865 (2014) (opinion by VIVIANO, J.) (discussing the history of business taxation in Michigan). However, this is not an issue to be resolved or further discussed on appeal.

On August 24, 2020, the parties filed a joint, stipulated motion to permit petitioner to file a first amended petition. Petitioner sought to amend its petition because it had "discovered that an investment tax credit taken by a company that Petitioner acquired in 2012, DTG Operations, Inc. (DTG), for MBT tax years 2008-2011 was disallowed by Respondent, and that disallowance impacted Petitioner's 2012 CIT return in that DTG's overpayments for 2008-2011, which flow to Petitioner's 2012 CIT return, changed." Petitioner sought to "protest Respondent's disallowance of DTG's investment tax credit to the extent it impacts Petitioner's tax year 2012 CIT return at issue in this case."

The MTT granted the motion to amend. In Count I of the first amended petition, petitioner again alleged that respondent wrongfully reduced its carryforward of tax overpayments for the 2012 CIT year based on its wrongful elimination of petitioner's carryforward of tax overpayments for the years 2008, 2009, and 2010. In Count II, petitioner now alleged that it had acquired DTG in November 2012, at which time "DTG's tax attributes began flowing to" petitioner's returns, and that respondent wrongfully denied DTG's validly claimed investment tax credit for tax years 2009-2011 and thereby negatively affected the amount of overpayment credit petitioner claimed on its 2012 CIT return to offset the tax due. Petitioner further asserted that respondent had wrongfully denied its request to recalculate the tax due for 2012 by adjusting the overpayment from prior tax years reported on petitioner's 2012 CIT return to account for DTG's validly claimed investment tax credit for tax years 2009-2011. Petitioner claimed that its "underpayments and late payments for the 2012 CIT Year were due, in part, to the Department's elimination of DTG's investment tax credit in tax years 2009-2011, which relatedly resulted in the Department's reduction of Hertz's carryforward of tax overpayments for the 2011 MBT Year and 2012 CIT Year[.]" Petitioner sought to have Final Assessment VA2XD3S "cancelled in its entirety."

Petitioner subsequently moved for summary disposition under MCR 2.116(C)(10). Petitioner argued that there was no genuine issue of material fact that respondent wrongfully disallowed a $549,750 overpayment credit that petitioner had carried forward from a prior tax period and claimed on its 2012 CIT return. According to petitioner, this credit was from investment tax credit that DTG properly claimed in MBT years 2009, 2010, and 2011 but that had been improperly denied by respondent. Petitioner maintained that because DTG's tax attributes "flowed into" petitioner's 2012 CIT return as a result of DTG's November 2012 merger into petitioner, petitioner was entitled to claim the $549,750 credit. Petitioner argued that it could demonstrate that DTG validly claimed the investment tax credit on its MBT returns from 2009-2011, that respondent had no basis for disallowing these credits, that DTG had provided respondent with the requisite information on the appropriate forms and supplemental documentation to support its claimed investment tax credit, and that petitioner's constitutional rights to due process and equal protection would be violated if its credit carryforward were disallowed. Petitioner claimed that responses were made to notices received from respondent but that certain notices regarding the credit adjustments made by respondent were either never received, or not timely received.

Petitioner explained how it was able to claim DTG's 2009-20011 investment tax credit on petitioner's 2012 CIT as follows:

> For tax year 2012, DTG and its affiliates, including Dollar Thrifty, filed a
> CIT Return for tax period January 1 through November 18. Hertz Global Holdings,

Inc. filed a 2012 CIT Return for the calendar year (ending December 31), reporting for its affiliates, including The Hertz Corporation and DTG, given the merger on November 19, 2012.

* * *

DTG claimed ITC [investment tax credit] on its 2009, 2010, and 2011 MBT returns. Treasury purportedly disallowed the ITC reported for 2009, 2010, and 2011, which negatively impacts Hertz's 2012 CIT Return by a waterfall effect. The ITC on the 2009 MBT Return created an overpayment. The 2009 overpayment was reported on DTG's 2010 MBT Return as a credit carryforward; then the 2010 overpayment, which also included the 2010 ITC, was reported on DTG's 2011 MBT Return as a credit carryforward; then the 2011 overpayment, which also included the 2011 ITC, was reported on DTG's 2012 short-year 2012 Return as a $549,750 credit carryforward. DTG's $549,750 credit carryforward for 2012 was reported on Hertz's 2012 CIT Return as a credit carryforward. In other words, the 2009-2011 ITC flowed into the $549,750 overpayment reported on Hertz's 2012 CIT Return.

In support of its motion, petitioner attached the relevant tax returns filed by DTG and petitioner. DTG's 2009 MBT Return reflected a $287,224 overpayment to be credited forward. DTG's 2010 MBT Return reflected the $287,224 overpayment credited from the prior return and a $472,600 total current overpayment to be credited forward and used as an estimate for the next tax year. DTG's 2011 MBT Return reflected the $472,600 overpayment credited from the prior return and a $556,113 total current overpayment to be credited forward and used as an estimate for the next tax year. DTG's 2012 CIT Return for the period January 1, 2012 to November 18, 2012, reflected the $556,113 overpayment credited from the prior MBT return and a $549,750 total current overpayment to be credited forward. Finally, petitioner's 2012 CIT Return[3] reflected a $549,750 overpayment credited from a prior period return.

Additionally, petitioner attached evidence of interactions with respondent regarding the adjustments to DTG's tax returns for the tax years 2008-2012. Petitioner submitted logs that were kept by DTG's tax department and documented communications with various tax authorities in 2012 and 2013. In June 2012, DTG's Senior Director of Tax Affairs, Janet Drumright,[4] responded to a June 19, 2012 notice from respondent requesting resubmission of certain documentation for DTG's 2009 and 2010 MBT returns. Drumright resubmitted forms for the 2009 and 2010 returns. On August 14, 2012, DTG received an August 9, 2012 notice from respondent indicating that there was a change to DTG's claimed overpayment and that DTG's claimed investment tax credit had

---

[3] This return was actually filed in the name of Hertz Global Holdings, Inc. In its motion for summary disposition and appellate brief, petitioner explained that it is "a subsidiary of Hertz Global Holdings, Inc." and that petitioner refers to itself and Hertz Global Holdings "collectively." For purposes of this opinion, we accept this fact as true.

[4] Since 2012, Drumright had been petitioner's Director of Tax Affairs.

-4-

been disallowed. Drumright responded by sending "Requested" information and a letter to respondent on October 8, 2012. On March 5, 2013, DTG received a March 1, 2013 refund adjustment notice that, according to DTG's log, indicated "Incomplete forms; calc error." Drumright responded on April 28, 2013, by providing "corrections." Drumright averred that the detail she provided to respondent in these communications "support[ed] DTG's investment tax credit claims for tax years 2009-2011."[5]

Petitioner also attached its responses to respondent's first set of discovery requests, indicating in relevant part as follows:

> 4. Please admit that the Michigan Business Tax (MBT) Annual Return Notice of Additional Tax Due addressed to DTG for the tax year ending December 31, 2009, dated October 24, 2014 (attached at Tab 1),[6] notified DTG about adjustments Treasury made related to that tax year, including a reduction of claimed credits.
>
> **RESPONSE: Denied.**
>
> 5. Please admit Petitioner did not challenge the MBT Annual Return of Notice of Refund Adjustment for tax year ending December 31, 2009, dated October 24, 2014 (attached at Tab 1), on DTG's behalf within 90 days of its issuance.
>
> **RESPONSE: Hertz's records reflect that it did not receive the Notice, dated October 24, 2014, until September 30, 2015. Since the Notice was not received within 90 days of issuance, Hertz was not able to challenge it within 90 days of its purported "issuance." With that said, Hertz admits Request to Admit No. 5. The Notice attached at Tab 1 states that the Department of Treasury ("the Department") adjusted Hertz's "nonrefundable cr[edit]" at line 54 from $291,753 "as filed" to $8,262 "as corrected by Treasury," noting "corrected to agree with total nonrefundable credits determined on Form 4568." Prior to this purported Notice, dated October 24, 2014, that Hertz did not timely receive, on June 19, 2012, and again on October 8, 2012, and again on April 28, 2013, DTG sent to the Department separate Form 4570s for each company in the group, showing the ITC credit calculation by company to supplement its 2009 MBT Return. DTG utilized tax software called Tax Dimensions when preparing the original 2009 MBT Return, and the software created only one Form 4570 and an attached statement that broke out the total amounts on the Form 4570 by company and amount, so that is what was filed with the original 2009 MBT Return. If the Department processed the separate Form 4570s sent by DTG to supplement its 2009 MBT Return, as it should have, the**

---

[5] Although the tax logs were attached to petitioner's motion for summary disposition, Drumright's affidavit was only attached to petitioner's subsequently filed reply brief.

[6] The record does not appear to contain a copy of this notice.

**Department should not have issued any subsequent notices adjusting the total nonrefundable credits, such as the purported Notice, dated October 24, 2014, that Hertz did not timely receive.**

6. Please admit DTG did not challenge the MBT Annual Return of Notice of Refund Adjustment for tax year ending December 31, 2009, dated October 24, 2014 (attached at Tab 1) within 90 days of its issuance.

**RESPONSE: Hertz (and DTG) did not receive the Notice, dated October 24, 2014, until September 30, 2015. As the Notice was not received within 90 days of issuance, Hertz was not able to challenge it within 90 days of its purported "issuance." With that said, Hertz admits Request to Admit No. 6. By way of further response, Hertz incorporates its Response to No. 5 above.**

7. Please admit Final Assessment No. UU56223, addressed to DTG, dated April 28, 2017 (attached at Tab 2),[7] relates to the 2009 tax year and imposed Michigan Business Tax liability.

**RESPONSE: Admitted.**

8. Please admit Petitioner did not challenge Final Assessment No. UU56223 within 90 days of its issuance.

**RESPONSE: Denied.**

9. Please admit DTG did not challenge Final Assessment No. UU56223 within 90 days of its issuance.

**RESPONSE: Denied.**

10. Please admit that the MBT Annual Return of Notice of Refund Adjustment addressed to DTG for tax year ending December 31, 2010, dated October 28, 2014 (attached at Tab 3),[8] notified DTG about adjustments Treasury made related to that tax year, including a reduction of the claimed refund.

**RESPONSE: Hertz neither admits nor denies Request No. 10 as, after Hertz made reasonable inquiry, the information known or readily obtainable by Hertz is insufficient to enable Hertz to admit or deny it.**

11. Please admit Petitioner did not challenge the MBT Annual Return of Notice of Refund Adjustment for tax year ending December 31, 2010, dated

---

[7] The record does not appear to contain a copy of this final assessment.

[8] The record does not appear to contain a copy of this notice.

October 28, 2014 (attached at Tab 3) on DTG's behalf within 90 days of its issuance.

**RESPONSE: Hertz neither admits nor denies Request No. 11 as, after Hertz made reasonable inquiry, the information known or readily obtainable by Hertz is insufficient to enable Hertz to admit or deny it.**

12. Please admit DTG did not challenge the MBT Annual Return of Notice of Refund Adjustment for tax year ending December 31, 2010, dated October 28, 2014 (attached at Tab 3) within 90 days of its issuance.

**RESPONSE: Denied.**

13. Please admit that the MBT Annual Return Notice of Refund Adjustment addressed to DTG for the tax year ending December 31, 2011, dated October 8, 2013 (attached at Tab 4),[9] notified DTG about adjustments Treasury made related to that tax year, including a reduction of the claimed refund.

**RESPONSE: Admitted.**

14. Please admit Petitioner did not challenge the MBT Annual Return Notice of Refund Adjustment for tax year ending December 31, 2011, dated October 8, 2013 (attached at Tab 4), on DTG's behalf within 90 days of its issuance.

**RESPONSE: Hertz neither admits nor denies Request No. 14 as, after Hertz made reasonable inquiry, the information known or readily obtainable by Hertz is insufficient to enable Hertz to admit or deny it.**

15. Please admit DTG did not challenge the MBT Annual Return Notice of Refund Adjustment for tax year ending December 31, 2011, dated October 8, 2013 (attached at Tab 4) within 90 days of its issuance.

**RESPONSE: Hertz neither admits nor denies Request No. 15 as, after Hertz made reasonable inquiry, the information known or readily obtainable by Hertz is insufficient to enable Hertz to admit or deny it.**

\* \* \*

Request to Admit No. 4 is denied as Hertz did not receive the Notice, dated October 24, 2014, until September 30, 2015. As the Notice was not received by Hertz (and DTG), the Department of Treasury did not give Hertz (and DTG) notice of the purported adjustments reflected in the Notice until it was received on September 30, 2015. This is supported by Hertz's records documenting when the Notice was received. Janet Drumright can testify to this.

---

[9] The record does not appear to contain a copy of this notice.

Requests to Admit Nos. 8 and 9 are denied as DTG, on June 19, 2012, and again on October 8, 2012, and again on April 28, 2013, sent separate Form 4570s for each company in the group, showing the ITC credit calculation by company, to the Department to supplement its 2009 MBT Return. If the Department processed the separate Form 4570s sent by DTG to supplement its 2009 MBT Return, as it should have, the Department should not have issued any subsequent notices adjusting the total nonrefundable credits, such as the purported Notice, dated October 24, 2014, that Hertz did not timely receive, and the purported Final Assessment dated April 28, 2017. DTG's submission of separate Form 4570s served as a protest of any adjustments and/or assessments issued for MBT tax year 2009 related to the ITC credit calculation and believed any adjustments and/or assessments – issued both prior to and after June 19, 2012 – would be resolved and cancelled. This is supported by DTG's tax records, including multiple logs that reflect the June 19, 2012, October 8, 2012, and April 28, 2013 filings being sent. Janet Drumright can testify to this.

Request to Admit No. 10 is neither admitted nor denied as Hertz's records do not reflect whether the Notice was received. This is supported by Hertz's tax records by the absence of any evidence the Notice was received within 90 days of the date reflected on it. Janet Drumright can testify to this.

Request to Admit No. 11 is neither admitted nor denied as Hertz's records do not reflect whether the Notice was protested. This is supported by Hertz's tax records. Janet Drumright can testify to this.

Request to Admit No. 12 is denied as DTG, on June 19, 2012, sent separate Form 4570s for each company in the group, showing the ITC credit calculation by company, to the Department to supplement its 2010 MBT Return. If the Department processed the separate Form 4570s sent by DTG to supplement its 2010 MBT Return, as it should have, the Department should not have issued any subsequent notices adjusting the total nonrefundable credits, such as the purported Notice, dated October 28, 2014. DTG's submission of separate Form 4570s in 2012 served as a protest of any adjustments and/or assessments issued for MBT tax year 2010 related to the ITC credit calculation and believed any adjustments and/or assessments – issued both prior to and after June 19, 2012 – would be resolved and cancelled. This is supported by DTG's tax records, including logs that reflect the June 19, 2012, filing being sent. Janet Drumright can testify to this.

Requests to Admit Nos. 14 and 15 are neither admitted nor denied as Hertz's records do not reflect whether the Notice was protested. This is supported by Hertz's tax records. Janet Drumright can testify to this.

Respondent argued in opposition that summary disposition should be granted in its favor pursuant to MCR 2.116(I)(2). First, respondent argued that petitioner's challenge amounted to an impermissible collateral attack on prior unchallenged tax adjustments from closed tax years. Respondent stated,

Here, there is no dispute that Treasury disallowed the investment tax credits that DTG claimed in 2009, 2010, and 2010 [sic]. Nor does Petitioner allege that any of those disallowances were disputed in accordance with the procedures provided for in the Revenue Act. Therefore, MCL 205.22(4) clearly prevents Petitioner from using this litigation as a back door to revisit those prior Treasury decisions.

Additionally, respondent argued that even if these prior tax year decisions could be revisited, respondent was still entitled to judgment in its favor because respondent properly disallowed DTG's claimed ITC in 2009, 2010, and 2011. Respondent finally argued that if the above arguments were rejected, an evidentiary hearing was necessary to determine the correct balance for Final Assessment VA2XD3S because this final assessment had already been modified multiple times during the course of the litigation as a result of separate informal conference proceedings, that were resolved in petitioner's favor, related to respondent's audit of petitioner's 2008-2010 tax returns.

Respondent submitted the affidavit of Joseph D'Souza, an auditor manager employed by respondent. D'Souza stated as follows regarding the adjustments to petitioner's 2012 CIT Return:

3. During the 2012 tax period Petitioner was the designated member of a unitary business group, which included several other members including Hertz Corporation and DTG Operations Inc. (DTG).

4. On line 42 its 2012 CIT return, Petitioner claimed an "overpayment credited from prior period return" in the amount of $549,750.

5. Treasury reduced the claimed overpayment in accordance with other adjustments Treasury had previously made, including adjustments related to Treasury's 2008–2010 Michigan Business Tax (MBT) audit of Hertz Corporation, as well as adjustments related to Treasury's disallowance of investment tax credits claimed by DTG during the 2009, 2010, and 2011 tax periods.

6. Treasury's adjustments related to the 2008–2010 MBT audit of Hertz Corporation were separately challenged by way of an informal conference assigned docket no. 20180927, which was ultimately resolved in the taxpayer's favor and required Treasury to recalculate Petitioner's 2011 MBT liability and 2012 CIT liability in light of the outcome of that informal conference.

7. As a result of the recalculation prompted by the informal conference proceedings to address the 2008–2010 MBT audit of Hertz Corporation, Final Assessment No. VA2XD3S was corrected as of January 7, 2020, to reflect tax due in the amount of $213,671.

8. Final Assessment No. VA2XD3S was further corrected as of November 20, 2020 to reflect tax due in the amount of $151,776.20; this correction was the result of additional adjustments prompted by the resolution of informal conference docket no. 20190703, which was initiated to address outstanding issues related to Petitioner's 2011 MBT tax liability, following the application of 2008–2010

-9-

updated audit adjustments prompted by the outcome of informal conference docket no. 20180927.

9. The remaining amount of tax due associated with Final Assessment No. VA2XD3S, relates to Treasury's prior year adjustments of DTG.

10. For the tax period ending December 31, 2009, Treasury made several adjustments to DTG's MBT return, which reduced DTG's claimed current year overpayment of $287,224 to $0, ultimately resulting in Petitioner incurring a tax deficiency and related penalties and interest and the issuance of Final Assessment No. UU56223, dated April 28, 2017, in the amount of $83,291.18. DTG fully paid this liability on May 18, 2017.

11. For the tax period ending December 31, 2010, Treasury made several adjustments to DTG's MBT return, which reduced DTG's claimed prior year overpayment of $287,224 to $0 and reduced DTG's claimed current year overpayment of $472,600 to $79,372. This $393,228 reduction in DTG's claimed current year overpayment is attributable to its claimed prior year overpayment reduction of $287,224 and various additional adjustments that increased its tax liability by $106,004. These adjustments are reflected in Treasury's MBT Annual Return Notice of Refund Adjustment (Refund Adjustment), dated October 28, 2014.

12. For the tax period ending December 31, 2011, Treasury made several adjustments to DTG's MBT return, which reduced DTG's claimed prior year overpayment of $472,600 to $79,372 and reduced DTG's claimed current year overpayment of $556,113 to $82,607. This $473,506 reduction in DTG's claimed current year overpayment is attributable to its claimed prior year overpayment reduction of $393,228 and various additional adjustments that increased its tax liability by $80,278. These adjustments are reflected in Treasury's Refund Adjustment, dated October 29, 2014.

13. For the tax period ending November 18, 2012, Treasury made several adjustments to DTG's CIT return, which reduced DTG's claimed prior year overpayment of $556,113 to $82,607 and reduced DTG's claimed current year overpayment of $549,750 to $71,706. This $478,044 reduction in DTG's claimed current year overpayment is attributable to its claimed prior year overpayment reduction of $473,506 and various additional adjustments that increased its tax liability by $4,538. These adjustments are reflected in Treasury's Refund Adjustment, dated September 10, 2018.

14. In its 2012 CIT return, Petitioner claimed DTG's 2012 prior year overpayment of $549,750. Treasury adjusted this credit to $71,706 resulting in Petitioner incurring a tax deficiency and related penalties and interest for the tax period ending December 31, 2012. In other words, amounts assessed against Petitioner in Final Assessment No. VA2XD3S are entirely attributable to Treasury's adjustments to DTG's returns between 2009 through 2012.

D'Souza further averred that respondent disallowed DTG's claimed ITC in 2009 through 2011 because DTG failed to supply the necessary level of detail on the requisite forms to show that DTG was entitled to the claimed credit.

In its reply brief, petitioner argued that the investment tax credits claimed by DTG in 2009-2011 that were disallowed by respondent could still be reviewed with respect to petitioner's 2012 CIT return because the statute of limitation was still "open" for the 2012 tax year. Petitioner maintained that the MTT could review a credit carryforward from a "closed" tax year and adjust it with respect to the open tax year. Petitioner also argued that DTG had provided sufficient detail to support the claimed investment tax credits for 2009-2011. Finally, in a somewhat confusing argument, petitioner asserted that respondent's reductions to the final assessment at issue that occurred as this case was pending did not deprive petitioner of the right to challenge respondent's disallowance of the DTG credit. Petitioner concluded by stating that the primary issue involved in its motion for summary disposition was "whether Hertz may claim the DTG credit carryforward in 2012."

Respondent moved to supplement its brief because respondent's "counsel learned that [respondent] had received supplemental documentation intended to support the credit that had been claimed in the 2009 return." Respondent argued, however, that this supplemental documentation that DTG had provided in 2013 was still insufficiently detailed such that the disallowance of DTG's claimed investment tax credit was proper. Respondent attached to its motion the affidavit of Marlon Carter, a Senior Departmental Analyst employed by respondent. Carter averred that respondent had received a supplemental chart on April 29, 2013, in response to respondent's notice to DTG of adjustments made to DTG's 2009 MBT return. The supplemental chart apparently purported to describe DTG's relevant capital investments for purposes of the claimed investment tax credit. Carter further averred that "[b]ecause the taxpayer failed to supply the detailed information required on the original returns or in the supplemental chart, Treasury disallowed the claimed investment tax credit for the 2009 tax year."

Subsequently, petitioner moved for limited discovery and costs. Petitioner argued that respondent should be compelled to produce other supplemental documentation in its possession that DTG had submitted to support the investment tax credits at issue. Petitioner also argued that it was entitled to costs under MCR 1.109(E)(6) because respondent had ignored the existence of the supplemental documents submitted by DTG to respondent despite having been put on notice of the existence of these documents by petitioner's pleadings in this matter.

Respondent opposed petitioner's motions, arguing that additional discovery related to the details surrounding respondent's disallowance of the 2009-2011 credits was not warranted because MCL 205.22(4) barred any reexamination of these previously unchallenged decisions. Respondent further argued that its motion to supplement was driven by the additional evidence petitioner provided with its reply brief and that the manner in which petitioner framed the issues in its motion for summary disposition did not obligate respondent to have provided the supplemental chart sooner. Accordingly, respondent maintained that it had not committed any discovery violations entitling petitioner to an award of costs. Respondent provided another affidavit by Carter in which Carter averred that he searched respondent's records related to the denials of DTG's claimed credits for the tax years 2010-2011 and "did not locate any documentation that [he] believe[d] would establish that the taxpayer had established entitlement to the claimed credit." He located a

-11-

summary chart related to the 2010 tax year that provided even less detail than the 2009 supplemental chart respondent previously submitted in this action.

The MTT granted respondent's motion for leave to supplement. The MTT subsequently issued a written opinion and judgment denying petitioner's motion for summary disposition and granting summary disposition in favor of respondent pursuant to MCR 2.116(I)(2). In its opinion, the MTT framed the issue as follows:

> In this case, there is no dispute that Final Assessment No. VA2XD3S, involving Petitioner's 2012 CIT Return, was timely appealed in accordance with Section 22 and that Petitioner has properly invoked the Tribunal's jurisdiction over that assessment. However, the analysis regarding the Tribunal's jurisdiction in this case is not that simple. One component of Petitioner's 2012 CIT Return is the carryforward of ITCs from previous tax years. In other words, while Petitioner's CIT Return is for the 2012 tax year, the credit Petitioner claims on the CIT Return was first claimed by DTG on a 2009 MBT Return and was subsequently carried forward on DTG's 2010 and 2011 MBT Returns. Petitioner asserts that "[a] credit carried forward from a closed tax year may be taken in an open tax year." The Tribunal agrees. However, the question in this case is whether the tax returns of the closed tax years from which the credits are carried forward may be reopened, and the credits re-examined.

The MTT determined that DTG's 2009, 2010, and 2011 tax assessments were final and not reviewable because the "parties do not dispute that DTG's 2009, 2010, and 2011 assessments were not appealed as provided for under MCL 205.22(1)." The tribunal further concluded that petitioner's challenge in the instant matter constituted an impermissible collateral attack on the underlying decisions by respondent regarding DTG's claimed ITC in 2009, 2010, and 2011, and that the tribunal thus would not disturb respondent's disallowance of DTG's ITC in 2009 through 2011. The MTT determined that it did not have jurisdiction to consider plaintiff's constitutional due-process and equal-protection claims, although it noted that "the Tribunal's review is de novo and thus Petitioner has an opportunity to be heard." The tribunal concluded:

> To summarize, because the assessments relative to DTG's 2009, 2010, and 2011 tax years were not appealed as provided for under MCL 205.22(1), these assessments are final and are not reviewable by the Tribunal under MCL 205.22(4). Because this was the sole issue presented by Petitioner, the Tribunal finds that it lacks jurisdiction in this matter. For this reason, Petitioner's Motion for Summary Disposition under MCR 2.116(C)(10) is denied, meaning that Petitioner's request that the Tribunal allow the $549,750 "overpayment credited from prior period return" is also denied. Finally, the Tribunal finds that Respondent is entitled to Summary Disposition as a matter of law under MCR 2.116(I)(2).

Additionally, in this same order, the MTT denied petitioner's motions for limited discovery and costs. This appeal followed.

## II. SUMMARY DISPOSITION

-12-

Petitioner contends that the MTT erred in its summary disposition ruling. "Our review of Tax Tribunal decisions, absent fraud, is limited to whether the tribunal made an error of law or adopted a wrong principle." *Curis Big Boy, Inc v Dep't of Treasury*, 206 Mich App 139, 143; 520 NW2d 369 (1994). This Court "defer[s] to the tribunal's interpretation of a statute that it is charged with administering and enforcing," *Spartan Stores, Inc v Grand Rapids*, 307 Mich App 565, 569; 861 NW2d 347 (2014) (quotation marks and citation omitted), but questions involving statutory interpretation present issues of law that are reviewed de novo, *id.*; *Fradco, Inc v Dep't of Treasury*, 495 Mich 104, 112; 845 NW2d 81 (2014).

"The tribunal's grant or denial of a motion for summary disposition is also reviewed de novo." *Spartan Stores*, 307 Mich App at 569. "Jurisdictional questions are reviewed de novo, but this Court must determine whether the affidavits, together with the pleadings, depositions, admissions, and documentary evidence, demonstrate . . . [a lack of] subject matter jurisdiction." *PIC Maintenance, Inc v Dep't of Treasury*, 293 Mich App 403, 407; 809 NW2d 669 (2011) (quotation marks and citation omitted; ellipsis and alteration in original). Summary disposition is proper under MCR 2.116(C)(10) if the affidavits and documentary evidence, when viewed in the light most favorable to the nonmoving party, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Tyson Foods, Inc v Dep't of Treasury*, 276 Mich App 678, 683; 741 NW2d 579 (2007). "If it appears to the court that the opposing party, rather than the moving party, is entitled to judgment, the court may render judgment in favor of the opposing party." MCR 2.116(I)(2).

The MTT relied on MCL 205.22 to justify its summary disposition ruling. "A taxpayer's right to appeal a Department of Treasury assessment is governed by MCL 205.22 . . . ." *PIC Maintenance*, 293 Mich App at 407. MCL 205.22 provides in relevant part as follows:

> (1) A taxpayer aggrieved by an assessment, decision, or order of the department may appeal the contested portion of the assessment, decision, or order to the tax tribunal within 60 days,[10] or to the court of claims within 90 days after the assessment, decision, or order. The uncontested portion of an assessment, order, or decision shall be paid as a prerequisite to appeal. However, an action shall be commenced in the court of claims within 6 months after payment of the tax or an adverse determination of the taxpayer's claim for refund, whichever is later, if the payment of the tax or adverse determination of the claim for refund occurred under the former single business tax act, 1975 PA 228, and before May 1, 1986.

\* \* \*

---

[10] The statute previously provided that a taxpayer could appeal to the tax tribunal within 35 days. MCL 205.22(1), as amended by 2007 PA 194. The amended version of the statute, which is quoted above, became effective on March 18, 2016, and did not make any other changes to the language of the provisions quoted above. MCL 205.22, as amended by 2015 PA 79.

-13-

(4) The assessment, decision, or order of the department, if not appealed in accordance with this section, is final and is not reviewable in any court by mandamus, appeal, or other method of direct or collateral attack.

(5) An assessment is final, conclusive, and not subject to further challenge after 90 days after the issuance of the assessment, decision, or order of the department, and a person is not entitled to a refund of any tax, interest, or penalty paid pursuant to an assessment unless the aggrieved person has appealed the assessment in the manner provided by this section.

Here, in response to petitioner's summary disposition motion, respondent submitted evidence to the MTT indicating that respondent had reduced DTG's claimed overpayment credits for the tax years 2009, 2010, 2011, and 2012, and issued corresponding notices of refund adjustment and a final assessment. There is evidence that respondent communicated these adjustments in 2014, 2017, and 2018. Perhaps most importantly, the record evidence reflects that respondent reduced DTG's overpayment credit of $287,224 that DTG claimed for the 2009 tax year to $0, which eventually led to respondent issuing an April 28, 2017 final assessment for DTG's resulting tax liabilities and penalties, and DTG fully paid the final assessment on May 18, 2017. As petitioner explained below, DTG's 2009 claimed overpayment credit was the beginning of the "waterfall" of tax overpayment credits that eventually flowed into the credit claimed by petitioner in its 2012 CIT return that is the subject of the instant litigation.

Petitioner had initiated this proceeding in the MTT on August 2, 2019, challenging the deficiency assessed by respondent in Final Assessment VA2XD3S. It initially appeared as though the parties agreed below that Final Assessment VA2XD3S indicated that petitioner owed tax, penalties, and interest as a result of adjustments respondent made to petitioner's 2012 CIT return. However, the basis for petitioner's challenge to Final Assessment VA2XD3S evolved as this case progressed.

Petitioner initially claimed that respondent had wrongfully eliminated petitioner's carryforward of tax overpayments for the years 2008, 2009, and 2010, following respondent's audit of *petitioner's* MBT returns for those tax years. Interestingly, the record reflects that petitioner was already engaged in separate informal conference proceedings with respondent to challenge respondent's underlying decisions about petitioner's 2008-2011 tax returns that in turn had affected respondent's decision regarding petitioner's 2012 tax return. Petitioner indicated that if the separate challenges regarding tax years 2008-2011 were resolved in its favor, then the tax due under Final Assessment VA2XD3S for 2012 would be eliminated. At the beginning of this case, none of petitioner's challenges to respondent's decisions regarding the tax years 2008-2012 involved DTG.

However, petitioner later "discovered" that its 2012 tax return had also been impacted by respondent's decision to disallow an investment tax credit claimed in tax years 2008-2011 *by DTG*, which petitioner had acquired in 2012. Petitioner amended its petition accordingly and, by the time petitioner moved for summary disposition, the DTG tax credits had become the sole focus of petitioner's challenge.

-14-

That petitioner's theory of recovery had become solely dependent on the DTG credits is evident from petitioner's arguments in its motion for summary disposition, which only discussed its entitlement to claim DTG's overpayment credits from 2009-2012 on petitioner's 2012 CIT return and did not discuss any other overpayment credits that had been disallowed but to which it believed it was still entitled. More specifically, petitioner focused its summary disposition argument on demonstrating that DTG was entitled to the overpayment credits in 2009-2012, which in turn would mean that petitioner was entitled to the overpayment credit at issue in 2012. Furthermore, D'Souza averred that the remaining outstanding tax due associated with Final Assessment VA2XD3S only related to respondent's prior year adjustments of DTG's claimed overpayments in 2009-2012. D'Souza further averred (1) that petitioner separately challenged through informal conference proceedings respondent's adjustments to petitioner's 2012 CIT return that stemmed from respondent's audit of petitioner's 2008-2010 returns and (2) that these challenges were resolved in petitioner's favor.

Hence, as petitioner's challenge was framed by the time of the summary disposition motion, the success of petitioner's claim depended entirely on its ability to demonstrate that respondent improperly disallowed tax overpayment credits for the tax years 2008-2012 that DTG had claimed and that were in turn claimed by petitioner in 2012 as a result of acquiring DTG that year. Petitioner's sole remaining basis for challenging its 2012 assessment, which undisputedly was itself timely, was its assertion that it was entitled to claim in 2012 the credits that had been disallowed to DTG for the tax years 2009-2012.[11]

However, there is no record evidence that respondent's prior adjustments and decisions regarding DTG's 2009-2012 credits were ever appealed in accordance with MCL 205.22. Although there is evidence that DTG responded to certain notices from respondent by supplying additional information, these responses do not constitute an "appeal" to the "tax tribunal" or "court "of claims," which is the statutory manner for a "taxpayer aggrieved by an assessment, decision, or order of the department" to contest that assessment, decision, or order. MCL 205.22(1). Moreover, DTG fully paid the April 28, 2017 final assessment issued by respondent as a result of respondent's decision to reduce DTG's 2009 claimed credit to $0. Without any evidence that the underlying decisions regarding DTG's 2009-2012 credits were ever appealed pursuant to MCL 205.22, these decisions became final, conclusive, unreviewable in any court, and immune from any further appeal, direct attack, or collateral attack. MCL 205.22(4) & (5).

The MTT therefore did not err by determining that there was no genuine issue of material fact that it could not review respondent's decisions regarding DTG's claimed credits from prior

---

[11] As the MTT recognized below, by the time of the summary disposition motion, the sole basis for petitioner's challenge was its contention that respondent wrongfully denied DTG's claimed ITC for the tax years 2009-2011, which in turn flowed into DTG's 2012 CIT return and then into petitioner's 2012 CIT return. It appears that petitioner abandoned any other bases on which to claim that respondent wrongfully reduced its claimed carryforward credit on its 2012 CIT return. This assertion is further underscored by record evidence showing that petitioner's additional challenges to its 2012 assessment were resolved in its favor through informal conference proceedings.

years that had been disallowed and not properly appealed pursuant to MCL 205.22 such that they had become final and not subject to further review or collateral attack. *Curis Big Boy*, 206 Mich App at 143; *Tyson Foods*, 276 Mich App at 683. Because petitioner's challenge to its 2012 CIT return could not succeed without reversing respondent's decisions regarding DTG's 2009-2012 credits, and because review of those prior decisions was barred, the MTT did not err by granting summary disposition in respondent's favor under MCR 2.116(I)(2).

Nonetheless, petitioner argues on appeal that the MTT's ruling was erroneous because, essentially, there was no valid and enforceable assessment, decision, or order to appeal from under MCL 205.22 with respect to DTG's disallowed credits in the relevant tax years. Petitioner raises several confusing arguments about whether notices of refund adjustments that respondent issued can be considered "final assessments" or whether such notices actually constitute "determinations" that do not fall within the scope of an "assessment, decision, or order of the department" that is appealable under MCL 205.22(1). Petitioner asserts that a notice of refund adjustment is not a "decision, or order" under MCL 205.22(1) because under MCL 205.21, respondent can only issue a "decision and order" in the context of the informal conference process. Petitioner also questions the enforceability of the final assessment that DTG undisputedly paid in full, based on petitioner's allegation that this final assessment was not timely issued. Petitioner continues to maintain that DTG properly claimed and supported its investment tax credits in the relevant tax years, such that respondent was incorrect to disallow the credits on the ground that DTG had provided insufficient detail to support the credits.

Petitioner's arguments implicate questions of statutory interpretation, the primary goal of which "is to discern and give effect to the intent of the Legislature." *Spartan Stores*, 307 Mich App at 569 (quotation marks and citation omitted). To ascertain the Legislature's intent, a reviewing court focuses on the statute's plain language and reads contested portions of a statute "in relation to the statute as a whole." *Id*. (quotation marks and citation omitted). "If the plain and ordinary meaning of statutory language is clear, judicial construction is normally neither necessary nor permitted." *Montgomery Ward & Co, Inc v Dep't of Treasury, Revenue Div*, 191 Mich App 674, 679; 478 NW2d 745 (1991).

"A taxpayer's right to appeal a Department of Treasury assessment is governed by MCL 205.22 . . . ." *PIC Maintenance*, 293 Mich App at 407. "MCL 205.22 governs an appeal of an assessment, decision, or order of the department . . . ." *Tyson Foods*, 276 Mich App at 690. "The plain language of the statute states that taxpayers aggrieved by 'an assessment, decision, or order' of the Department of Treasury may appeal. MCL 205.22(1). Thus, only assessments, decisions, or orders are appealable." *PIC Maintenance*, 293 Mich App at 411-412.

However, the phrase "assessment, decision, or order" is not as narrow in scope as petitioner contends. See *Montgomery Ward*, 191 Mich App at 680-681 (stating that an initial notice of intent to levy tax is an "assessment" that "is within the purview" of MCL 205.22 and that final assessments following an informal conference are not the only types of assessments that are appealable under MCL 205.22). It is undisputed that respondent disallowed tax credits claimed by DTG in tax years 2009-2012, and there is no evidence that those decisions were ever appealed in accordance with MCL 205.22. Hence, whether those disallowances are considered assessments, decisions, or orders, they became final and not subject to any review. MCL 205.22(4).

Even if any of petitioner's arguments would have merit in the context of directly challenging those decisions, petitioner does not cite any authority for the proposition that there is an exception to MCL 205.22(4) based on perceived deficiencies in procedural technicalities, nor does petitioner cite any authority for its conclusion that the disallowances were "void" by operation of law based on the manner in which they were communicated to DTG in this case.[12] "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give issues cursory treatment with little or no citation of supporting authority." *Houghton v Keller*, 256 Mich App 336, 339; 662 NW2d 854 (2003) (citations omitted). "An appellant's failure to properly address the merits of his assertion of error constitutes abandonment of the issue." *Id*. at 339-340.

Next, petitioner argues that even if respondent's adjustments to DTG's claimed credits in 2009-2012 are final, those adjustments may still be corrected for purposes of petitioner's 2012 tax return and that petitioner is entitled to claim these credits on its 2012 return under MCL 205.30(1). Petitioner maintains that it timely challenged respondent's decision regarding the 2012 return and that the four-year statute of limitations in MCL 205.27a has not expired with respect to the credits claimed in prior years because that statute does not mention "credits" and therefore only applies to refunds and not credits. Petitioner further argues that the four-year statute of limitations in MCL 205.27a also does not apply in this case to bar reexamining DTG's claimed credits because adjustments to tax credits do not create a "deficiency" requiring the taxpayer to make a payment to respondent and credits therefore do not fall within the scope of MCL 205.27a. Accordingly, based on these foundational premises, petitioner argues that the MTT may properly apply an overpayment credit from a closed tax year to open tax year after determining whether the credit is valid.

MCL 205.30 provides in relevant part:

> (1) The department shall credit or refund an overpayment of taxes; taxes, penalties, and interest erroneously assessed and collected; and taxes, penalties, and interest that are found unjustly assessed, excessive in amount, or wrongfully collected with interest at the rate calculated under section 23 for deficiencies in tax payments.

> (2) A taxpayer who paid a tax that the taxpayer claims is not due may petition the department for refund of the amount paid within the time period specified as the statute of limitations in section 27a. If a tax return reflects an overpayment or credits in excess of the tax, the declaration of that fact on the return constitutes a claim for refund. If the department agrees the claim is valid, the amount of overpayment, penalties, and interest shall be first applied to any known liability as provided in section 30a, and the excess, if any, shall be refunded to the taxpayer or credited, at the taxpayer's request, against any current or subsequent tax liability. Except claims for refunds, other than those made under part 1 of the

---

[12] Whatever procedural deficiencies petitioner believes occurred with respect to the disallowance of DTG's tax credits, such arguments could have and should have been raised through a timely and proper appeal of those decisions pursuant to MCL 205.22.

income tax act of 1967, 1967 PA 281, MCL 206.1 to 206.532, that have not been approved, denied, or adjusted within 1 year of the date received may be treated as denied at the election of the taxpayer, and may be appealed by the taxpayer in accordance with section 22.

(3) The department shall certify a refund to the state disbursing authority who shall pay the amount out of the proceeds of the tax in accordance with the accounting laws of the state. Interest at the rate calculated under section 23 for deficiencies in tax payments regarding those refunds shall be added to the refund commencing 45 days after the claim is filed or 45 days after the date established by law for the filing of the return, whichever is later. Interest on refunds intercepted and applied as provided in section 30a shall cease as of the date of interception. Refunds for amounts of less than $1.00 shall not be paid.

MCL 205.27a provides in relevant part:

(2) A deficiency, interest, or penalty shall not be assessed after the expiration of 4 years after the date set for the filing of the required return or after the date the return was filed, whichever is later. The taxpayer shall not claim a refund of any amount paid to the department after the expiration of 4 years after the date set for the filing of the original return. A person who has failed to file a return is liable for all taxes due for the entire period for which the person would be subject to the taxes. If a person subject to tax fraudulently conceals any liability for the tax or a part of the tax, or fails to notify the department of any alteration in or modification of federal tax liability, the department, within 2 years after discovery of the fraud or the failure to notify, shall assess the tax with penalties and interest as provided by this act, computed from the date on which the tax liability originally accrued. The tax, penalties, and interest are due and payable after notice and hearing as provided by this act.

(3) The statute of limitations shall be extended for the following if the period exceeds that described in subsection (2):

(a) The period pending a final determination of tax through audit, conference, hearing, and litigation of liability for federal income tax and for 1 year after that period.

(b) The period for which the taxpayer and the state treasurer have consented to in writing that the period be extended.

(c) The period described in section 21(6) and (7) or pending the completion of an appeal of a final assessment.

(d) A period of 90 days after a decision and order from an informal conference, or a court order that finally resolves an appeal of a decision of the department in a case in which a final assessment was not issued prior to appeal.

(4) The statute of limitations is extended only as to those items that were the subject of the audit, conference, hearing, or litigation for federal income tax or a tax administered by the department. As used in this subsection, "items that were the subject of the audit" means items that share a common characteristic that were examined by an auditor even if there was no adjustment to the tax as a result of the examination. Items that share a common characteristic include items that are reported on the same line on a tax return or items that are grouped by ledger, account, or record or by class or type of asset, liability, income, or expense.

Even if petitioner were correct that MCL 205.27a somehow does not apply to tax credits, MCL 205.22(4) still provides that if an aggrieved taxpayer does not appeal the relevant "assessment, decision, or order of the department . . . in accordance with this section," then the assessment, decision, or order becomes "final and is not reviewable in any court by mandamus, appeal, or other method of direct or collateral attack." This Court has specifically held that MCL 205.30 and MCL 205.27a do not serve to allow collateral attacks that are otherwise prohibited under MCL 205.22 based on the taxpayer's failure to appeal in accordance with § 22 because § 22, as the more specific rule, controls in a situation where a taxpayer fails to properly challenge a decision as required under § 22. As this Court explained:

> While these provisions [in MCL 205.30 and MCL 205.27a] set forth a general time frame and the process by which a taxpayer may obtain a refund, they do not purport to address the question of whether a refund is available when an assessment has become final and conclusive because a taxpayer failed to challenge the assessment in the time period set forth in MCL 205.22. That specific question is unequivocally addressed in MCL 205.22(5) . . . Accordingly, MCL 205.22(5), being the more specific rule, controls whether a refund is available to a taxpayer who fails to challenge an assessment as required under MCL 205.22, and the general four-year time period for requesting a refund as set forth in MCL 205.30 and MCL 205.27a(2) does not allow collateral attacks of final assessments. . . . Indeed, to read the refund mechanisms in MCL 205.30 and MCL 205.27a as an end-run around the requirements for appealing an assessment under MCL 205.22 would be to impermissibly render MCL 205.22 nugatory or, in other words, as the Tax Tribunal aptly recognized, to construe these provisions "as a second avenue to challenge an assessment is to ignore the prohibition against collateral attack" set forth in MCL 205.22. [*Thumb Motorsports, LLC v Dep't of Treasury*, unpublished per curiam opinion of the Court of Appeals, issued November 17, 2016 (Docket No. 329121), pp 5-6.][13]

Essentially, petitioner's arguments about the application of MCL 205.27a rely on a mischaracterization of the nature of this case. Reexamination of respondent's decisions regarding

---

[13] We find this analysis persuasive. Although unpublished opinions are not precedentially binding, an unpublished opinion may serve as "a guide because of the limited caselaw on the subject matter." *Peterson Novelties, Inc v City of Berkley*, 259 Mich App 1, 20 n 16; 672 NW2d 351 (2003).

the disallowance of the tax credits claimed by DTG in the relevant tax years was prohibited by operation of MCL 205.22, not the application of the statute of limitations in MCL 205.27a. Hence, petitioner's arguments about the statute of limitations in MCL 205.27a are not persuasive as they fail to demonstrate that the MTT committed any error in this case. *Thumb Motorsports*, unpub op at 5-6.

Petitioner next argues that the MTT erred by concluding that it did not have jurisdiction to hear petitioner's constitutional claim. Petitioner argues that it merely stated its argument challenging respondent's decision in "constitutional terms" by asserting that respondent's refusal to allow supplemental documentation to support DTG's credits that were disallowed violated its right to equal protection. See, e.g., *Forest Hills Co-operative v Ann Arbor*, 305 Mich App 572, 618-620; 854 NW2d 172 (2014) (stating that the MTT does not have jurisdiction to invalidate statutes or consider constitutional matters but that "[m]erely couching a challenge to an assessment in constitutional terms does not deprive the Tax Tribunal of its exclusive jurisdiction to consider a claim that the assessment is arbitrary or without foundation"). As petitioner concedes, it does not argue that any statute is unconstitutional. As such petitioner's argument is best understood as another attempt to revisit the propriety of respondent's decisions to disallow DTG's credits from tax years 2009-2012. As fully explained above, those decisions are final and not subject to any further review or collateral attack. MCL 205.22(4). Accordingly, petitioner's argument does not demonstrate an entitlement to any relief, and the MTT's ruling in this respect is affirmed.[14]

We therefore affirm the MTT's ruling granting summary disposition in favor of respondent.

## III. ADDITIONAL ISSUES

Petitioner next argues that the MTT erred by denying petitioner's motion for limited discovery. Petitioner maintains that it was entitled to further discovery regarding documents in respondent's possession that DTG had provided to support its credit claims for the tax years 2009-2012.

Discovery rulings by the MTT are reviewed for an abuse of discretion. *Henderson v Dep't of Treasury*, 307 Mich App 1, 8; 858 NW2d 733 (2014). "A trial court abuses its discretion when it chooses an outcome falling outside the range of reasonable and principled outcomes, or when it makes an error of law." *Thomas M Cooley Law Sch v Doe 1*, 300 Mich App 245, 263; 833 NW2d 331 (2013) (citations omitted).

"It is well settled that Michigan follows an open, broad discovery policy that permits liberal discovery of any matter, not privileged, that is relevant to the subject matter involved in the

---

[14] To the extent the basis for the MTT's ruling on petitioner's arguments involving the constitution could be understood as erroneous, this Court has often stated: "[a] trial court's ruling may be upheld on appeal where the right result issued, albeit for the wrong reason." *Gleason v Mich Dep't of Transp*, 256 Mich App 1, 3; 662 NW2d 822 (2003).

pending case." *Reed Dairy Farm v Consumers Power Co*, 227 Mich App 614, 616; 576 NW2d 709 (1998).

The tax tribunal rules provide that the Michigan court rules govern if an applicable tax tribunal rule does not exist. TTR 792.10215. Under TTR 792.10243, "A party to a contested case may serve upon another party a request to produce or permit the inspection and copying or photographing, by or on behalf of the requesting party, of any designated documents, papers, books, records, accounts, letters, photographs, objects, or tangible things, which are not privileged, which come within the scope of discovery permitted by rule 2.302(B) of the Michigan court rules, and which are in the party's possession, custody, or control." Pursuant to the general scope of discovery rule in MCR 2.302(B)(1), "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claims or defenses and proportional to the needs of the case, taking into account all pertinent factors, including whether the burden or expense of the proposed discovery outweighs its likely benefit, the complexity of the case, the importance of the issues at stake in the action, the amount in controversy, and the parties' resources and access to relevant information."

Here, petitioner argues that it was entitled to discovery of material pertaining to the denial of the tax credits claimed by DTG in 2009-2012. As explained above, respondent's decisions to disallow those tax credits are final and not subject to further review. Accordingly, the material petitioner sought in its motion for limited discovery was not relevant to any claims at issue in the case and would not have provided any benefit to resolving the case. *Id.*; *Reed Dairy Farm*, 227 Mich App at 616. Thus, the tribunal did not abuse its discretion by denying petitioner's motion.

Petitioner additionally argues that respondent's motion to supplement, which included the supplemental document provided by DTG, constituted an admission that respondent's previous filings that did not acknowledge the existence of such documents and violated MCR 1.109(E)(5) such that respondent should be sanctioned. This Court has stated:

> Although this Court's review of a Tax Tribunal's findings of fact and application of law is generally quite limited, those limitations apply only to decisions relating to valuation or allocation of taxes, which is not at issue for an order of sanctions. This Court reviews de novo whether the Tax Tribunal properly interpreted and applied the court rules, and this Court reviews for clear error the Tax Tribunal's findings underlying its application of the court rules. A finding is clearly erroneous when, on review of the whole record, this Court is left with the definite and firm conviction that the Tax Tribunal made a mistake. [*New Covert Generating Co, LLC v Twp of Covert*, 334 Mich App 24, 89-90; 964 NW2d 378 (2020) (citations omitted).]

Under MCR 1.109(E)(5), "The signature of a person filing a document, whether or not represented by an attorney, constitutes a certification by the signer that: (a) he or she has read the document; (b) to the best of his or her knowledge, information, and belief formed after reasonable inquiry, the document is well grounded in fact and is warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law; and (c) the document is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." MCR 1.109(E)(6) provides that "[i]f a document is signed in

violation of this rule, the court, on the motion of a party or on its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the document, including reasonable attorney fees. The court may not assess punitive damages."

Here, considering the irrelevance of matters related to the denial of DTG's 2009-2012 credits and that respondent argued in the MTT that respondent's decisions related to DTG's 2009-2012 credits were not subject to any further review or collateral attack, it is difficult to understand how respondent's previous filings were not well grounded in fact and warranted by existing law. MCR 1.109(E)(5). The MTT did not err by declining to award costs to petitioner. *New Covert Generating Co*, 334 Mich App at 89-90.

Finally, to the extent petitioner appears raise a new issue in its reply brief about the amount of petitioner's outstanding tax liability, this issue is not properly before this Court and need not be addressed because it was not included in petitioner's statement of the questions presented. *Busch v Holmes*, 256 Mich App 4, 12; 662 NW2d 64 (2003).

Affirmed.

/s/ Douglas B. Shapiro
/s/ Stephen L. Borrello
/s/ Christopher P. Yates