BUSCH v HOLMES

Docket No. 235160. Submitted February 13, 2003, at Detroit. Decided March 20, 2003, at 9:05 A.M.

Gregory J. Busch brought an action in the Saginaw Circuit Court against Stewart A. Holmes and Underwriters at Lloyds, London, alleging breach of an insurance contract after the defendants refused to indemnify the plaintiff for attorney fees he incurred in defending a federal criminal indictment for knowingly violating the Clean Water Act, 33 USC 1321(b)(3), by knowingly discharging oil. The court, Robert L. Kaczmarek, J., concluded that the plain language of the insurance contract did not provide indemnity for attorney fees incurred in defending against the criminal prosecution, and granted summary disposition in favor of the defendants. The plaintiff appealed.

The Court of Appeals *held*:

1. The plain and unambiguous language of the insurance policy only provided liability coverage and indemnity for defense costs with regard to specified removal costs and damages incurred for violations of the Oil Pollution Act, 33 USC 2702. The plaintiff's indictment did not seek removal costs or damages, but criminal penalties under the Clean Water Act. Thus, the plaintiff was not entitled to have his defense costs indemnified under the plain language of the insurance policy.

2. Even if the insurance policy could be construed to cover defense costs for some criminal violations, the policy's clear and specific exclusion for liability incurred as a result of the insured's willful misconduct precluded coverage for the claimed attorney fees in this case.

Affirmed.

*Warner Norcross & Judd LLP* (by *Paul T. Sorensen*) for the plaintiff.

*Dykema Gossett PLLC* (by *Jill M. Wheaton*) and *Lord, Bissell & Brook* (by *Don W. Fowler*) for the defendants.

Before: WHITBECK, C.J., and GRIFFIN and OWENS, JJ.

GRIFFIN, J. Plaintiff Gregory J. Busch appeals by right from an order of the circuit court granting summary disposition in favor of defendants Stewart A. Holmes and Underwriters at Lloyds, London pursuant to MCR 2.116(C)(10) regarding plaintiff's complaint alleging breach of an insurance contract for defendants' refusal to indemnify plaintiff for $157,350 in attorney fees incurred by plaintiff in defending a criminal indictment. We affirm.

I

On January 19, 1999, a grand jury for the United States District Court for the Western District of Michigan indicted plaintiff for "knowingly violat[ing] Section 1321(b)(3) of Title 33 of the United States Code by knowingly discharging oil into and upon the navigable waters of the United States in a quantity that may be harmful."[1]

At the time of the alleged crime, plaintiff was insured under a "Limited U.S. Oil Pollution Insurance Policy" underwritten by defendant Holmes on behalf of defendant Underwriters at Lloyds, London. Following the indictment, plaintiff demanded coverage under the insurance policy. Defendants denied plaintiff's request in a denial letter that states, in pertinent part:

---

[1] Pursuant to subsection 1319(c)(2) of the Clean Water Act, a knowing violation of subsection 1321(b)(3) of the Act is a criminal offense for which a first offender is subject to a fine of not less than $5,000 nor more than $50,000 for each day of violation, or imprisonment for not more than three years, or both. 33 USC 1319(c)(2). A negligent violation of subsection 1321(b)(3) is also a criminal offense, subjecting the offender to lesser criminal sanctions. 33 USC 1319(c)(1).

> The indictment presently pending against your client charges Mr. Busch with "knowingly discharging oil." If found guilty of the violation, Title 33, Section 1321(b)(3) provides for the assessment of a civil penalty. The insurance policy, however, provides coverage for removal costs and contains express exclusions for wilful discharges and for penalties. For these reasons, on behalf of the interested insurers signatory to captioned policies, we do not waive and hereby expressly reserve any right the insurers may have to deny coverage and refuse to indemnify your client for any penalty which may be imposed or for any costs or expenses incurred in defending against the indictment.

> You have pointed out that although Mr. Busch has been charged with knowingly discharge [sic] of oil, it is possible that at the trial the evidence may only establish an accidental discharge. If that should be the case, please be assured that the interested insurers will re-visit this issue and consider any claim for indemnification which may be covered by the policy.

Thereafter, plaintiff incurred $157,350 in attorney fees in defending the criminal indictment. The criminal proceedings were terminated by a plea-bargain agreement wherein the United States Attorney agreed to dismiss the charge of knowingly discharging oil in violation of 33 USC 1321(b)(3) in exchange for plaintiff's plea of guilty to one count of *negligently* causing water pollution by discharging oil (33 USC 1319[c][1]), the payment of a civil penalty of $25,000 to settle all potential civil and administrative claims, and the suspension of his coast-guard license for sixty days.

Following the conclusion of the criminal case, defendants paid plaintiff $10,000 in partial indemnity for the civil penalty, but refused to indemnify plaintiff for the $157,350 in attorney fees incurred in defending the criminal indictment. Plaintiff then brought the

present action for declaratory relief and breach of contract. The circuit court granted summary disposition in favor of defendants, ruling that the insurance policy clearly and unambiguously did not provide indemnity for attorney fees incurred in defending this criminal prosecution. We agree.

In its ruling, the circuit court distinguished the duty-to-defend cases relied on by plaintiff on the basis that the case at bar was a criminal prosecution rather than a civil case, and therefore the pleadings could not be readily amended to trigger a duty to indemnify. Further, the circuit court relied on *Patterson v Standard Accident Ins Co*, 178 Mich 288, 291; 144 NW 491 (1913),[2] for the principle of law that, "[i]t would be against public policy for this Court to hold an insurance company has a duty to defend a criminal prosecution."[3] Plaintiff now appeals.

II

In *South Macomb Disposal Auth v American Ins Co (On Remand)*, 225 Mich App 635, 653-654; 572 NW2d 686 (1997), Judge (now Chief Justice) Corrigan summarized the following well-established principles that guide our interpretation of insurance policies:

> We apply general rules of construction in interpreting insurance policies. Interpretation of a contract with clear

---

[2] We note that the present case is distinguishable from *Patterson* for the reason that the policy at issue does not contain the word "suit." See also, *Michigan Millers Mut Ins Co v Bronson Plating Co*, 445 Mich 558; 519 NW2d 864 (1994).

[3] It is not necessary for us to address the public-policy argument in light of our disposition that the insurance policy clearly does not afford coverage. Cf. *Bowman v Preferred Risk Mut Ins Co*, 348 Mich 531, 545-546; 83 NW2d 434 (1957).

language is a question of law, which is reviewed de novo. *Auto Club Ins Ass'n v Lozanis*, 215 Mich App 415, 419; 546 NW2d 648 (1996). A court determines whether the policy is clear and unambiguous on its face. *Upjohn Co v New Hampshire Ins Co*, 438 Mich 197, 206; 476 NW2d 392 (1991). Courts may not create ambiguities where none exist, but must construe ambiguous policy language in the insured's favor. *Fire Ins Exchange v Diehl*, 450 Mich 678, 687; 545 NW2d 602 (1996). Clear and unambiguous language may not be rewritten under the guise of interpretation; contract terms must be enforced as written, and unambiguous terms must be construed according to their plain and commonly understood meaning. *Upjohn, supra* at 207; *Lozanis, supra*. Additionally, an insurance contract should be viewed as a whole and read to give meaning to all its terms. *Fresard v Michigan Millers Mut Ins Co*, 414 Mich 686, 694; 327 NW2d 286 (1982). Conflicts between clauses should be harmonized, and a contract should not be interpreted so as to render it unreasonable. *Id.*

Exclusionary clauses are strictly construed in the insured's favor. *Auto-Owners Ins Co v Churchman*, 440 Mich 560, 567; 489 NW2d 431 (1992). A clear and specific exclusion must be given effect; an insurance company may not be held liable for unassumed risks. *Id.* If any exclusion in an insurance policy applies to a claimant's particular claims, coverage is lost. *Id.*

Further, "[t]his Court reviews the grant or denial of summary disposition de novo to determine if the moving party is entitled to judgment as a matter of law." *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999).

III

At the outset, we note that plaintiff has misstated the issue in terms of whether defendants breached a duty to defend, rather than a duty to indemnify. At oral argument, plaintiff's counsel conceded that the

insurance policy does not contain a duty-to-defend clause. On the contrary, the policy contains only a clause that provides indemnity for "[c]osts, charges and expenses incurred, . . . defending against or investigating or adjusting any liabilities insured against . . . ."

The civil cases relied on by plaintiff that hold "an insurer's duty to defend is broader than the duty to indemnify," *Auto-Owners Ins Co v Clare*, 446 Mich 1, 15; 521 NW2d 480 (1994), and *Polkow v Citizens Ins Co of America*, 438 Mich 174; 476 NW2d 382 (1991), are inapplicable because the policy at issue does not contain a duty-to-defend clause. Rather, defendant's duty is the more limited duty to indemnify. Accordingly, the doctrine that an insurer has a duty to defend "arguable" claims is not involved.

We interpret an insurance contract similarly to any other contract, and look to the plain language of the insurance policy in determining the scope of coverage for indemnity. *South Macomb Disposal Auth, supra.* The insurance policy at issue is entitled: "Limited U.S. Oil Pollution Insurance Policy." Its coverages are contained in section I, "Insuring Agreement." In summary, under section I:

> [T]he Underwriters do hereby agree to indemnify the Assured for such amounts . . . as the Assured shall . . . have become liable to pay and shall pay, by reason of or with respect to:
>
> FIRST: *Liability* under Section 1002 of the Act [Oil Pollution Act, 33 USC 2702] for a discharge of oil . . . *for the following specified removal costs or damages*:
>
> \*      \*      \*
>
> SECOND: Liability under Section 1005(a) of the Act [Oil Pollution Act, 33 USC 2705(a)] to a claimant for interest on

an amount paid in satisfaction of a claim under Section
1002 of the Act;

THIRD: Liability under any State statute, regulation or common law action, consistent with and equivalent in nature or
scope to liabilities imposed under the Act, for removal
costs or damages . . . ;

FOURTH: *Costs, charges and expenses incurred, . . . in
defending against or investigating or adjusting any liabilities insured against under Sections* FIRST, SECOND or THIRD
above, . . . . [Emphasis added.]

As previously noted, plaintiff was indicted by the
federal grand jury for knowingly violating the Clean
Water Act by knowingly discharging oil. The insurance policy, however, provides liability coverage for
specified removal costs and damages incurred for violations of the Oil Pollution Act. The relevant section
of the Oil Pollution Act provides:

Notwithstanding any other provision or rule of law, and
subject to the provisions of this Act, *each responsible party*
for a vessel or a facility from which oil is discharged, or
which poses the substantial threat of a discharge of oil, into
or upon the navigable waters or adjoining shorelines or the
exclusive economic zone *is liable for the removal costs and
damages* specified in subsection (b) of this section that
result from such incident. [33 USC 2702(a) (emphasis
added).]

The contractual indemnity provision for defense
costs relied on by plaintiff provides that "costs,
charges and expenses incurred . . . in defending
against or investigating or adjusting any liabilities
insured against under Sections FIRST, SECOND or THIRD
above," will be reimbursed by defendants. The
referred sections (First, Second, and Third) provide
liability coverage that the assured shall "become liable to pay and shall pay, by reason of or with respect

to . . ." "specified removal costs or damages." The indictment, however, did not seek removal costs or damages but criminal penalties.

Plaintiff's argument that defendants were estopped from denying coverage because of the Confirmation of Insurance,[4] which provides additional coverage for "fines and penalties as covered under the Oil Pollution Act,"[5] does not alter this result because this document does not refer to defense costs. The only duty to indemnify for defense costs is contained in the fourth subparagraph of the policy, and this duty is limited to the liability incurred by the preceding first, second, and third paragraphs. The contractual provision provides for indemnity for defense costs incurred for liability that the assured shall assume for removal costs and damages only. The insurance policy, by its plain language, does not provide defense costs for defending criminal charges asserting criminal responsibility that may arise irrespective of removal costs and damages.

Finally, even if the insurance policy were deemed to cover defense costs for some criminal violations, a clear and specific exclusion contained in the policy precludes coverage for the claimed attorney fees. Specifically, section II provides:

II. EXCLUSIONS

THIS INSURANCE DOES NOT APPLY:

1. To any liability which would otherwise be covered under Sections FIRST, SECOND, THIRD or FOURTH above, if the

---

[4] This is a two-page document that supplements defendants' standard Limited U.S. Oil Pollution Insurance Policy.

[5] This additional grant of coverage for fines and penalties has a limit of liability of $10,000 for each incident and $30,000 in the aggregate.

incident giving rise to the liability is the result of the Assured's wilful misconduct.

Here, plaintiff's claimed attorney fees all were incurred in defense of a criminal indictment that charged plaintiff with knowingly violating the Clean Water Act by knowingly discharging oil. 33 USC 1319(c)(2). Because the liability arose solely from plaintiff's alleged intentional misconduct, the willful-misconduct exclusion operates to exclude any coverage that otherwise would apply. See, generally, *Allstate Ins Co v Miller (After Remand)*, 226 Mich App 574; 575 NW2d 11 (1997). Cf. *State Farm Fire & Casualty Co v Couvier*, 227 Mich App 271; 575 NW2d 331 (1998).

Plaintiff's additional arguments of waiver or estoppel are not preserved for appeal because these arguments were not set forth in plaintiff's statement of the question involved. Therefore, we need not consider them. MCR 7.212(C)(5); *Lansing v Hartsuff*, 213 Mich App 338, 351; 539 NW2d 781 (1995).

Affirmed.