# STATE OF MICHIGAN

# COURT OF APPEALS

SANDRA JEAN OWEN,

        Plaintiff-Appellee,

and

BEAUMONT HEALTH SYSTEM,

        Intervening Plaintiff-Appellee,

v

BRISTOL WEST PREFERRED INSURANCE
COMPANY,

        Defendant-Appellant.

UNPUBLISHED
March 10, 2016

No. 323036
Wayne Circuit Court
LC No. 12-006993-NI

Before: SHAPIRO, P.J., and O'CONNELL and GLEICHER, JJ.

PER CURIAM.

Plaintiff Sandra Owen was severely injured in an automobile accident on March 11, 2012. She sought personal protection insurance (PIP) benefits from defendant Bristol West Preferred Insurance Company. Bristol West denied her claim, asserting that her no-fault insurance policy was not in effect on the date of the accident. Plaintiff brought suit. The parties stipulated that there were no questions of fact, agreed on the amount in controversy, and filed cross motions for summary disposition. The trial court found that the policy was in effect on the date of the accident. We affirm.

Plaintiff purchased a no-fault policy from Bristol West that ran from September 9, 2011 until March 8, 2012. She enrolled in Bristol West's "direct debit" system, which allowed Bristol West to obtain direct payment of premiums from her bank account. On February 8, 2012, one month before plaintiff's policy was set to expire, Bristol West sent plaintiff a letter and documents regarding renewal of plaintiff's policy beginning on March 9, 2012 and ending on September 9, 2012. It is undisputed that under the terms of plaintiff's policy, Bristol West could only cancel the policy for nonpayment of a premium after providing at least 10 days' notice to plaintiff. The policy provided:

-1-

We may cancel this policy at any time for nonpayment of premium by providing at least ten days notice to you at the address shown in our records.[1]

Although the renewed policy was set to begin on March 9, 2012, Bristol West waited until March 12, 2012 to debit plaintiff's bank account for the first payment on the renewal. On that day, the account did not contain sufficient funds to pay the full amount of the premium. Later, when Bristol West was notified of the March 11, 2012 accident, it denied coverage, asserting that there was no policy was in effect that day. The trial court, however, concluded that the policy was in effect on the date of the accident and granted summary disposition in plaintiff's favor.

On appeal, Bristol West argues that it was not required to send a notice of cancellation because the policy that was set to begin on March 9, 2012 never took effect because the debit attempted three days later, on March 12, 2012, failed. Bristol West asserts that the February 8, 2012 letter and documents it sent to plaintiff did not constitute a policy renewal and instead merely constituted an offer of renewal, which could not be accepted until after the first premium payment was made. Bristol West directs us to the provision in the policy that provides:

> *If we offer to renew* or continue and you or your representative do not accept, this policy will automatically terminate at the end of the current policy period. *If you fail to pay the required renewal or continuation premium when due, this shall mean that you have not accepted our offer.* [Emphasis added.]

The question before us, therefore, is whether the February 8, 2012 correspondence constituted the issuance of a renewal policy or was merely an offer to renew. If it was a renewal policy, then plaintiff's policy was in effect on March 11, 2012, the date of the accident. If it was merely an offer to renew contingent on payment of the first premium when due, then, absent grounds for equitable estoppel, the policy would not be in effect on the date of the accident.

After a review of the record, we conclude as a matter of law that the February 8, 2012 letter and documents were, by their plain terms, an issued renewal policy. Bristol West sent plaintiff the actual proof of insurance certificate for the renewed policy. That certificate stated: "BRISTOL WEST INSURANCE COMPANY, an authorized Michigan insurer, certifies that it *has issued* a policy complying with [Michigan's No-Fault Act] for the described motor vehicle." (emphasis added). The phrase "has issued" employs the past tense, which indicates that the policy was already issued. The certificate further states that the policy was issued to plaintiff and that the effective date of the policy was March 9, 2012. Nothing in the certificate indicates that a new policy was merely offered to plaintiff or that the policy issued was contingent on payment of the first premium. Moreover, the certificate states that "a person . . . who issues . . . an invalid certificate of insurance is guilty of a misdemeanor." See MCL 500.3101a.[2] Based on the plain

---

[1] This provision is mandated by MCL 500.3020(1)(b).

[2] MCL 500.3101a provides that certificates of insurance shall be provided "in conjunction with issuance of an automobile insurance policy" and that issuance of fraudulent certificate is a misdemeanor.

language of the certificate that was provided with the February 8, 2012 materials, we conclude that the policy "has been issued."[3]

Other aspects of the February 8, 2012 letter and documents are consistent with this conclusion. The letter and accompanying materials do not include the word "offer."[4] Rather, the letter thanks plaintiff for "selecting" Bristol West as her "auto insurance provider," and indicates that a plan for payment has already been agreed to and arranged. It further warns that, should plaintiff wish to prevent automatic billing, she must inform Bristol West of this "at least 3 business days prior to the installment due date," and instructs plaintiff that she should "contact us immediately if you would like to make any changes" to the policy. Absent from the letter is any language asking plaintiff to reauthorize Bristol West to make automatic withdrawals, to sign any additional paperwork, or do anything other than allow things to continue as they had been. Finally, the payment schedule included in the renewal packet stated, "[B]e sure there are sufficient funds in your account. . . . If your financial institution does not honor your payment, a $25.00 NSF fee will be charged." There is nothing in the payment schedule advising plaintiff that if the payment is not honored it will result in the automatic and immediate termination of her policy.

Bristol West relies on its statement that the coverage would become effective "[u]pon payment of the required renewal premium" and suggests that we view that statement in isolation. However, it is well-settled that "an insurance contract should be viewed as a whole and read to give meaning to all its terms," and that "[c]onflicts between clauses should be harmonized, and a contract should not be interpreted so as to render it unreasonable." *Busch v Holmes*, 256 Mich App 4, 8; 662 NW2d 64 (2003) (quotation omitted). Thus, we consider the cited provision in conjunction with the 10 days' notice provision, and, most significantly, with the certificate of insurance that was provided to plaintiff with the February 8, 2012 documents. And Bristol West's suggested interpretation is wholly inconsistent with the use of past tense verbs throughout the documents provided. At most, the company's arguments indicate a potential ambiguity in the contract, which must be resolved against the drafter. See *State Farm Mut Auto Ins Co v Enterprise Leasing Co*, 452 Mich 25, 38-39; 549 NW2d 345 (1996). If the February 8, 2012 correspondence was intended to only consist of an offer to renew, rather than an actual renewal, Bristol West could have used clear and unambiguous language to that effect.[5] Instead, the plain language in Bristol West's February 8, 2012 correspondence indicated that, *absent further action on plaintiff's part*, the policy would remain in effect without change.

---

[3] We review de novo the construction and interpretation of an insurance contract. *Henderson v State Farm Fire and Casualty Co*, 460 Mich 348, 353; 596 NW2d 190 (1999).

[4] Although the letter does stated that Bristol West was "no longer offering Underinsured Motorist (UIM) limits of $20,000 per accident/$40,000 per occurrence," that language did not pertain to the issue in this case, which is whether the entire renewal packet was merely an offer of renewal.

[5] Bristol West, in fact, used plain language in an April 27, 2012 letter to plaintiff explaining the denial by stating that the "policy automatically terminated effective the end of the policy period." Such clear language is absent from the renewal mailing.

Accordingly, based on the language used in the February 8, 2012 renewal packet, we hold that the February 8, 2012 letter and accompanying certificate of insurance was not merely an offer; it was a renewal policy accompanied by a bill. The renewed policy was in effect on March 12, 2012 and could only be cancelled ten days after the mailing of a notice of cancellation "reasonably calculated to arrive at the appropriate address at least ten days before the cancellation date." *Nowell v Titan Ins Co*, 466 Mich 478, 488; 648 NW2d 157 (2002). Bristol West provided no such notice in this case. Because the policy was not properly cancelled, plaintiff's policy was in effect on the date of the accident, and the trial court did not err in granting summary disposition in plaintiff's favor.[6]

Affirmed.

/s/Douglas B. Shapiro

---

[6] Given this analysis, it is not necessary to reach the question that Judge Gleicher's concurrence thoughtfully considers, i.e. whether given Bristol West's unilateral control over the date of payment and its failure to seek payment prior to the date of the accident, it should be equitably estopped from denying coverage.