*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ERIC ALCORN,

        Plaintiff-Appellee,

v

CENTRAL CONTAINER CORP., TOROSIAN
TECH SERVICES, INC., TOM SECORD, JOHN
DOE, GRAND TRAVERSE CONTAINERS, INC.,
JOHN DOE CORP., and LATITUDE MACHINERY
CORP.,

        Defendants,

and

TIEN CHIN YU MACHINERY
MANUFACTURING COMPANY, LTD.,

        Defendant-Appellee,

and

CRAIG E. HILBORN,

        Appellant,

and

GRANT W. PARSONS,

        Appellee.

UNPUBLISHED
July 11, 2025
3:07 PM

No. 362481
Grand Traverse Circuit Court
LC No. 2011-028683-NO

ERIC ALCORN,

        Plaintiff-Appellant,

-1-

v

CENTRAL CONTAINER CORP., TOROSIAN
TECH SERVICES, INC., TOM SECORD, JOHN
DOE, GRAND TRAVERSE CONTAINERS, INC.,
JOHN DOE CORP., and LATITUDE MACHINERY
CORP.,

          Defendants,

and

TIEN CHIN YU MACHINERY
MANUFACTURING COMPANY, LTD.,

          Defendant-Appellee.

---

Before: BOONSTRA, P.J., and REDFORD and MARIANI, JJ.

PER CURIAM.

In Docket No. 362481, appellant Craig E. Hilborn appeals as of right an order in which the trial court denied his motion to compel disbursement of attorney fees. In Docket No. 364538, plaintiff, Eric Alcorn, appeals as of right an order in which the court amended a 2014 default judgment entered against defendant Tien Chin Yu Machinery Manufacturing Company, Ltd. (TCY). And in Docket No. 366030, Alcorn appeals as of right an order in which the court vacated a renewal of judgment and assessed sanctions against Alcorn and his attorney. We affirm in Docket Nos. 364538 and 366030. In Docket No. 362481, we affirm in part, reverse in part, and remand for further proceedings.

## I. BRIEF OVERVIEW

Alcorn was seriously injured in an industrial accident and brought suit against several entities, including Taiwanese entities TCY and Latitude Machinery Corp. (Latitude). He entered into a contingency-fee agreement with attorney Grant W. Parsons, and Parsons, in turn, hired Hilborn as co-counsel. Settlements against some defendants were obtained, and two default judgments for $1,574,000 each were entered against TCY and Latitude in 2014. In April 2018, Hilborn was disbarred on the basis of activity unrelated to the present case, and Parsons engaged David M. Findling and his law firm to assist him. Eventually, the judgment against Latitude was collected upon, although judgment interest was not included in the collected amount. When Findling attempted to collect against TCY, TCY sought relief from judgment, arguing that $1,574,000 represented Alcorn's *total* damages and that he could not obtain a double recovery.

The trial court agreed that the two 2014 default judgments were not supposed to afford Alcorn two separate recoveries of $1,574,000—one from TCY and one from Latitude—but instead that the $1,574,000 amount represented Alcorn's total damages award as to both. Accordingly, the court issued an order in December 2022 indicating that the 2014 judgment against TCY was amended and would encompass only those monies (such as interest) remaining from the total damages award of $1,574,000 after the collection from Latitude was taken into account. The court also, in a separate order, concluded that Hilborn was not entitled to any attorney fees.

In February 2023, after filing a claim of appeal regarding the December 2022 order, Alcorn sought to renew the 2014 default judgment against TCY, and a successor judge initially granted the request but later vacated the renewal. The court concluded, among other things, that Alcorn had misled it by failing to mention that the judgment had been amended in 2022, and it assessed sanctions against Alcorn and his attorney (Findling).

On appeal, Hilborn contends that he was the attorney who obtained the default judgment against Latitude and that he is owed attorney fees—either a contingency fee or a fee based on quantum meruit—from the amount that has been collected from Latitude. Alcorn argues that the court erred in December 2022 by amending the 2014 judgment against TCY because TCY waited too long to raise its "double recovery" argument. Alcorn also argues that the court should not have vacated its renewal order and should not have assessed sanctions against him and Findling.

## II. DOCKET NO. 362481

Hilborn contends that he is entitled to an attorney fee on the basis of a contingency-fee agreement for his work in securing a default judgment against Latitude. Alternatively, he argues that a hearing should be held regarding his entitlement to fees for that work on the basis of quantum meruit. We disagree that Hilborn has shown entitlement to a contingency fee, but we agree that an evidentiary hearing regarding his quantum-meruit claim is warranted.

Contractual interpretation is reviewed de novo. *Kelley v Gen Motors, LLC*, 335 Mich App 349, 357; 966 NW2d 716 (2021). But a decision regarding whether to award attorney fees is generally reviewed for an abuse of discretion. *Reed v Reed*, 265 Mich App 131, 164; 693 NW2d 825 (2005). Quantum meruit is an equitable doctrine, and "equitable issues are reviewed de novo, although the findings of fact supporting the decision are reviewed for clear error." *Cipri v Bellingham Frozen Foods, Inc (After Remand)*, 235 Mich App 1, 9; 596 NW2d 620 (1999).

Hilborn argues that he is entitled to a contingency fee for the default judgment against Latitude because it is not disputed that Parsons agreed to split attorney fees 50/50 with him, the original contingency-fee agreement signed by Alcorn provided for a one-third contingency fee on any "recovery," and that latter agreement defined "recovery" as "any and all settlements and/or awards, including, but not limited to, settlements obtained prior to filing a lawsuit, out-of-court settlements, mediation awards and verdicts." He contends that Findling's later (and successful) efforts at collection are irrelevant because the original contingency-fee agreement specifically excluded fees for "collection on judgments."

Tellingly, however, Hilborn acknowledges on appeal that he has no such contingency-fee claim as to TCY. As Hilborn explains, because he was not involved in the "substantial post-

judgment litigation" that occurred in the circuit court regarding TCY's efforts to seek relief from the default judgment against it, he "did not complete the work to be done" in that matter, meaning that only recovery in quantum meruit would be appropriate. Hilborn's arguments do not explain—and we fail to see—why that conclusion should be any different as to Latitude. Although the procedural histories of the two matters are not identical, the Latitude matter, like the TCY matter, required substantial postjudgment labor to defend the judgment at issue; for the Latitude matter, this came as a result of Latitude's 2020 motion to set aside the default judgment against it. And as in the TCY matter, Hilborn was not involved in this postjudgment work, but the work was instead completed by Findling's law firm. Accordingly, and consistent with Hilborn's own arguments, Hilborn "did not complete the work to be done" in the Latitude matter either, and is likewise not entitled to a contingency fee for his partial work on it.

Both parties cite *Rippey v Wilson*, 280 Mich 233; 273 NW 552 (1937), and contend that it supports their respective positions. Neither party is entirely right. In *Rippey*, the plaintiffs, who were attorneys, sought to recover for legal services. The defendant "denie[d] liability for any sum whatever on the ground that plaintiffs were guilty of unprofessional conduct and abandonment of his cause, forcing him to make an unfair contract, rendering their services as a whole worthless to him, and thereby forfeiting all right to compensation." *Id*. at 243. Our Supreme Court observed that the defendant's position—"that plaintiffs are entitled to no compensation whatever"—rested on a theory that all the defendant's legal services were part of a single transaction. *Id*. at 245. The Court stated that "[a]n attorney may lose his right to fees for unprofessional conduct or abandonment of his client's case," but it concluded that if the services were severable, the plaintiffs could be compensated for "such services as produced definite valuable results to defendant." *Id*. The Court found "no authority that where the services are severable, misconduct as to one phase forfeits fees as to another." *Id*.

Accordingly, to the extent Parsons maintains that, under *Rippey*, Hilborn's eventual abandonment of the Latitude matter categorically forecloses him from receiving any compensation whatsoever for his prior work, we disagree. That said, we do not read *Rippey* to support the notion that Hilborn would be entitled to a contingency-fee award for that work, given his abandonment before it was complete. In light of this authority and Hilborn's own arguments on appeal, we conclude that a contingency-fee award is not appropriate because Hilborn did not complete his services in the case against Latitude.

We agree with Hilborn, however, that recovery in quantum meruit for his work on the Latitude matter might still be appropriate. MCR 9.119(F) states that "[a] disbarred, suspended, resigned, or inactive attorney may be compensated on a quantum meruit basis for legal services rendered and expenses paid by him or her prior to the effective date of the disbarment, suspension, resignation, or transfer to inactive status." In addition, as noted, the Court in *Rippey* recognized that, if the services rendered by an attorney are severable, the attorney can be compensated for "such services as produced definite valuable results to" the client. 280 Mich at 246.

Here, Hilborn did engage in work to obtain the valuable default judgment against Latitude. And while he did not complete his work on that matter due to his eventual misconduct and abandonment, those circumstances appear, on the present record, to be severable from his prior work in securing the judgment, such that quantum-meruit recovery would not be barred. As this Court explained in *Reynolds v Polen*, 222 Mich App 20, 26; 564 NW2d 467 (1997),

quantum meruit recovery of attorney fees is barred when an attorney engages in misconduct that results in representation that falls below the standard required of an attorney (e.g., disciplinable misconduct under the Michigan Rules of Professional Conduct) or when such recovery would otherwise be contrary to public policy.

The parties do not dispute that Hilborn's disbarment was wholly unrelated to the present case, and there appears to be no evidence that Hilborn engaged in misconduct in relation to this case. And although Parsons argues that Hilborn has already been compensated, the record indicates that such compensation was in relation to other defendants. Accordingly, and particularly in light of MCR 9.119(F), we conclude that a remand is warranted for a hearing regarding the work Hilborn put in to obtain the default judgment against Latitude and any quantum-meruit recovery such work may merit.

### III. DOCKET NO. 364538

Alcorn contends that the trial court erred by amending the 2014 default judgment against TCY in 2022 because, under MCR 2.612(C), TCY waited too long to request that relief from the judgment and did not demonstrate sufficient grounds to justify it. We disagree.

"We review a trial court's decision to grant or deny a motion for relief from judgment for an abuse of discretion, which occurs when the trial court's decision falls outside the range of principled outcomes" or when the court "premises its exercise of discretion on an error of law." *Int'l Outdoor, Inc v SS Mitx, LLC*, ___ Mich App __, ___; ___ NW3d ___ (2023) (Docket No. 359082); slip op at 3-4.

As noted, in 2014, the trial court entered two default judgments, one against TCY and one against Latitude. They were short and substantively identical; both identified $1,574,000 as "the amount [Alcorn] is entitled to," and both ordered "that a Default Judgment in th[at] amount . . . be entered." Alcorn successfully collected that amount from Latitude and filed a Certificate of Satisfied Judgment as to Latitude in 2021. Alcorn also sought to recover under the judgment against TCY, including by taking action in 2022 to domesticate the judgment in California in order to pursue an asset his counsel had identified as TCY's. TCY then filed the motion at issue a few months later, seeking relief under MCR 2.612(C)(1)(e) and (f) on the basis that Alcorn was attempting to use the judgment against it to improperly secure a double recovery. In December 2022, in response to TCY's motion for relief, the court amended the 2014 default judgment against TCY to "include the following": that "[t]he damages awarded in the [2014 TCY] Judgment constitute the same damages that were awarded in" the 2014 default judgment against Latitude; that Alcorn "suffered a single injury and is not entitled to double recovery for that injury"; that "[a]ny amounts recovered pursuant to the Latitude Judgment shall be equally attributed to the [TCY] Judgment"; and that Alcorn "may recover from [TCY] only those amounts that were awarded and remain unsatisfied."

Alcorn now objects to this amendment to the TCY judgment. At the hearing on TCY's motion for relief from judgment, however, Alcorn's counsel (Findling) affirmatively agreed with and acquiesced to the understanding of the judgment memorialized by that amendment. Findling stated that his prior collection of the $1,574,000 judgment amount from Latitude was a settlement

but explained that judgment interest on the amount had not yet been paid, leaving the recovery incomplete. He stated that he "sought to enforce what I thought were two separate judgments" but later conceded that only one award of damages was at issue.[1] Findling agreed that Alcorn "shouldn't get more than what he's entitled to" and the court confirmed with Findling that he agreed that the amount due under the TCY judgment is "having to do with interest" and that Findling would "limit his collection efforts to $350,000, or whatever the amount turns out to be for the interest, that is unpaid." While Alcorn maintains that Findling was simply confirming his understanding of the court's ruling, we believe the record reflects a level of agreement and acquiescence well beyond that, resulting in Alcorn's waiver of the ability to now object to the amendment of the TCY judgment. See, e.g., *Grant v AAA Mich/Wis, Inc (On Remand)*, 272 Mich App 142, 148; 724 NW2d 498 (2006) ("A party who expressly agrees with an issue in the trial court cannot then take a contrary position on appeal."); *Marshall Lasser, PC v George*, 252 Mich App 104, 109; 651 NW2d 158 (2002) ("A party is not allowed to assign as error on appeal something which his or her own counsel deemed proper at trial since to do so would permit the party to harbor error as an appellate parachute.") (quotation marks and citation omitted).

Even setting aside this waiver, we do not see merit in Alcorn's challenge to the amendment. Alcorn does not attempt to argue on appeal that the understanding memorialized by the amendment—that the two 2014 default judgments were intended to allow only one recovery of a $1,547,000 total damages amount from TCY and Latitude collectively—is substantively incorrect. Nor would the record support such an argument. Alcorn's focus is instead on TCY's failure to seek the amendment sooner. Because it was brought under MCR 2.612(C)(1)(e) and (f), TCY's motion for relief needed to be filed "within a reasonable time." MCR 2.162(C)(2). Although the original default judgment against TCY was entered in 2014, TCY's motion was prompted by a much more recently arising concern regarding improper double recovery—namely, Alcorn's efforts to collect on the judgment even after securing $1,547,000 from Latitude—and it was filed within months of Alcorn taking action to domesticate the judgment in California in pursuit of that recovery. Furthermore, during much of the roughly 8-year span between the filing of the instant motion and the original entry of the default judgment, the trial court's jurisdiction to even enter that judgment was in doubt, as TCY had successfully challenged it in this Court.[2] Alcorn has

---

[1] At one point during the hearing, Findling stated:

> I understand and accept the [c]ourt's statement that with respect to the recovery my client will not be permitted to have two judgments in force.

> Essentially what the [c]ourt is saying [is] that the amount that make[s] [Alcorn] whole is the 1,574,000 together with whatever judgment interest of cost [sic] will be accrued, one recovery; I accept that.

[2] By way of further background, in 2014, a little under a month after the trial court entered the default judgment against TCY, TCY filed a motion to set the judgment aside for lack of personal jurisdiction. The trial court denied the motion, but TCY successfully appealed, with this Court issuing an opinion in January 2016 that reversed the court's ruling and remanded for further proceedings. See *Alcorn v Central Container Corp*, unpublished per curiam opinion of the Court

failed to show that, under these circumstances, TCY's motion was not filed within a reasonable time or that the trial court abused its discretion by entertaining TCY's request for relief.

Alcorn has also failed to show that the trial court abused its discretion by granting that relief and amending the judgment. MCR 2.612(C)(1)(e) permits relief where a "judgment has been satisfied, released, or discharged; a prior judgment on which it is based has been reversed or otherwise vacated; or it is no longer equitable that the judgment should have prospective application." Alcorn maintains that this subrule does not apply because the TCY judgment has not itself been satisfied, no underlying prior judgment has been reversed or vacated, and the subrule's equitable concerns regarding prospective application do not apply to a money judgment. But even accepting Alcorn's position on this subrule for the sake of argument, that still leaves MCR 2.612(C)(1)(f), which permits relief for "[a]ny other reason justifying relief from the operation of the judgment." This subrule "provides the court with a grand reservoir of equitable power to do justice in a particular case and vests power in courts adequate to enable them to vacate judgments whenever such action is appropriate to accomplish justice." *Heugel v Heugel*, 237 Mich App 471, 481; 603 NW2d 121 (1999) (quotation marks omitted). That said, it does have limits:

> In order for relief to be granted under MCR 2.612(C)(1)(f), the following three requirements must be fulfilled: (1) the reason for setting aside the judgment must not fall under subsections a through e, (2) the substantial rights of the opposing party must not be detrimentally affected if the judgment is set aside, and (3) extraordinary circumstances must exist that mandate setting aside the judgment in order to achieve justice. [*Id.* at 478-479.]

Under the very unusual circumstances of the instant case, we find relief under this subrule was within the range of principled outcomes. As discussed, Alcorn was pursuing a double recovery under the TCY judgment. This was directly at odds with the ruling underlying the judgments, which was acknowledged and agreed to on the record by counsel and which contemplated one damages award of $1,547,000. Amending the judgment to make its intent and operation in this regard perfectly clear did not detrimentally affect any substantial rights of Alcorn's, *id.* at 479; indeed, Alcorn had no right to the unintended and legally improper windfall that would attend a double recovery in this case. See, e.g., *Grace v Grace*, 253 Mich App 357, 368; 655 NW2d 595 (2002) ("Generally, under Michigan law, only one recovery is allowed for an injury. . . . Thus, where a recovery is obtained for any injury identical with another in nature, time, and place, that recovery must be deducted from the plaintiff's other award.") (citations omitted). Relatedly, we see no error in the conclusion that the apparent pursuit of such an unlawful and inequitable double recovery, including through the courts of another state, presented sufficiently

---

of Appeals, issued January 12, 2016 (Docket No. 323940). TCY's motion to set aside the default from 2014 thus remained pending with the trial court. but the next action pertaining to TCY did not occur until 2020, when Alcorn moved to strike TCY's motion. The record reflects some uncertainty about whether and when TCY received service and notice of various matters pertaining to this motion, but eventually, in November 2020, the trial court entered an order finding it had personal jurisdiction over TCY and denying TCY's 2014 motion.

extraordinary circumstances requiring the court's intervention to achieve justice. *Heugel*, 237 Mich App at 479.

In opposing the application of MCR 2.612(C)(1)(f), Alcorn maintains that, because this situation arose due to the trial court's mistake in entering the two judgments as it did, TCY's motion was governed by MCR 6.216(C)(1)(a), which permits relief on the basis of "[m]istake, inadvertence, surprise, or excusable neglect"—but which, per MCR 6.216(C)(2), requires such relief to be sought "within one year after the judgment, order, or proceeding was entered or taken." That Alcorn may be able characterize the circumstances here as a mistake, however, is not dispositive of MCR 2.612(C)(1)(f)'s applicability; "a trial court may properly grant relief from a judgment under MCR 2.612(C)(1)(f), even where one or more of the bases for setting aside a judgment under subsections a through e are present, when additional factors exist that persuade the court that injustice will result if the judgment is allowed to stand." *Heugel*, 237 Mich App at 481. Accepting Alcorn's framing of this matter as a mistake, the only potential barrier to relief for TCY would be the timing of its motion. As discussed, however, there was good reason why TCY's request for relief did not come sooner than it did, and injustice would plainly result if, nonetheless, Alcorn were allowed to secure an unlawful and inequitable double recovery of its $1,574,000 damages award. Under the particular circumstances presented by this case, we do not find MCR 2.612(C)(1)(a)'s potential applicability sufficient to foreclose the requested relief under MCR 2.612(C)(1)(f), or to show an abuse of discretion in the court's amendment of the judgment.

Accordingly, Alcorn has failed to show entitlement to relief from the trial court's 2022 amendment of the 2014 default judgment against TCY.

## IV. DOCKET NO. 366030

Alcorn next contends that the trial court erred by (1) vacating its renewal of the 2014 judgment against TCY because his ex parte motion to renew had omitted the judgment's 2022 amendment, and (2) sanctioning him and Findling for that omission.

This Court reviews an award of sanctions under MCR 1.109(E) for an abuse of discretion and the underlying factual findings for clear error. See *Sprenger v Bickle*, 307 Mich App 411, 422-423; 861 NW2d 52 (2014) (discussing prior version of the court rule). We review de novo the interpretation of statutes and court rules. *Estes v Titus*, 481 Mich 573, 578; 751 NW2d 493 (2008); *Barclay v Crown Bldg & Dev, Inc*, 241 Mich App 639, 642; 617 NW2d 373 (2000).

Alcorn sought to renew the judgment against TCY under MCL 600.5809, which states, in relevant part:

(1) A person shall not bring or maintain an action to enforce a noncontractual money obligation unless, after the claim first accrued to the person or to someone through whom he or she claims, the person commences the action within the applicable period of time prescribed by this section.

\* \* \*

(3) Except as provided in subsection (4), the period of limitations is 10 years for an action founded upon a judgment or decree rendered in a court of record of

-8-

this state, or in a court of record of the United States or of another state of the United States, from the time of the rendition of the judgment or decree. . . . Within the applicable period of limitations prescribed by this subsection, an action may be brought upon the judgment or decree for a new judgment or decree. The new judgment or decree is subject to this subsection.

When filing his ex parte motion to renew the judgment, Alcorn presented a proposed order reading as follows:

IT IS HEREBY ORDERED that

pursuant to MCL 600.5809(3), the judgment entered on July 23, 2014 against Defendant, Tien Chin Yu Machinery Mfg. Co., Ltd and in favor Plaintiff, Eric Alcorn (a copy of the TCY Judgment is attached to this order), is renewed for ten (10) years from the entry of this order.

IT IS FURTHER HEREBY ORDERED that the present unpaid balance owed by Defendant, Tien Chin Yu Machinery Mfg. Co., Ltd to Plaintiff, Eric Alcorn for the TCY Judgment shall be unaffected by the entry of this Order.

The court initially granted the motion to renew but later vacated its renewal order and assessed sanctions. The court found that Alcorn had "intentionally misled [it] by failing to reference or otherwise adequately incorporate" into his motion the December 2022 order amending the default judgment—which had been handled by a prior judge—or the pending appeal of that order. The court noted that the pending appeal "divested [the court] of its jurisdiction to enter" the renewal order.

MCR 7.208(A) states, in part:

After a claim of appeal is filed or leave to appeal is granted, the trial court or tribunal may not set aside or amend the judgment or order appealed from except

(1) by order of the Court of Appeals,

(2) by stipulation of the parties,

(3) after a decision on the merits in an action in which a preliminary injunction was granted, or

(4) as otherwise provided by law.

Alcorn contends that MCR 7.208(A) did not divest the court of jurisdiction to renew the 2014 default judgment during the pendency of his appeal because MCL 600.5809(3) was a "law" allowing for such renewal, in accordance with MCR 7.208(A)(4). He also asserts that MCR 7.208(A) was not even applicable to his renewal request because he was not seeking to renew the 2022 order being appealed; instead, he was seeking to renew the 2014 default judgment, which was not itself being appealed.

Alcorn's arguments are unavailing. As discussed, the December 14, 2022 order materially amended the 2014 default judgment; it specifically stated that the default judgment was "amended to include the following" and then detailed the amendments in five ensuing paragraphs. Accordingly, even assuming that the trial court retained jurisdiction to renew a judgment, the judgment Alcorn offered for renewal did not reflect the material amendment that had been made to it, nor did the motion seeking its renewal mention that amendment or the pending appeal thereof. Alcorn's arguments do not meaningfully account for this omission. If Alcorn is correct, for instance, that MCL 600.5809(3) authorized his renewal motion during the pendency of his appeal, then there would have been no jurisdictional barrier to including the December 2022 order, with its amendment to the 2014 judgment, in his renewal request. Nor is it apparent why, even if the 2014 judgment was all that was technically being renewed, it would be sensible or proper for the amendment of that judgment and the pending appeal thereof to go wholly unmentioned in the request, given both the materiality of that amendment to the judgment and the appeal's focus on undoing it. In light of these circumstances, we do not see error by the trial court in concluding that Alcorn's renewal motion was misleading and the renewal order should consequently be vacated.

Regarding sanctions, MCR 1.109(E) states, in part:

(5) *Effect of Signature*. The signature of a person filing a document, whether or not represented by an attorney, constitutes a certification by the signer that:

(a) he or she has read the document;

(b) to the best of his or her knowledge, information, and belief formed after reasonable inquiry, the document is well grounded in fact and is warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law; and

(c) the document is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

(6) *Sanctions for Violation*. If a document is signed in violation of this rule, the court, on the motion of a party or on its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the document, including reasonable attorney fees. The court may not assess punitive damages.

For the reasons discussed, Alcorn's wholesale omission from his renewal motion of the judgment's amendment and his pending appeal of that amendment gave the court ample reason to conclude

that the motion was not well grounded in fact and/or was brought for an improper purpose. Accordingly, the court did not abuse its discretion in sanctioning Alcorn for that omission.[3]

## V. CONCLUSION

In Docket No. 362481, we affirm the denial of a contingency fee but reverse and remand for a hearing regarding quantum meruit. In Docket Nos. 364538 and 366030, we affirm. We do not retain jurisdiction.

/s/ Mark T. Boonstra
/s/ James Robert Redford
/s/ Philip P. Mariani

---

[3] Alcorn also takes issue with the amount of sanctions awarded. MCR 1.109(E)(6) states that sanctions "may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the document, including reasonable attorney fees." TCY submitted a very detailed bill of costs on which the court relied in determining the amount of sanctions. Alcorn argues that the court was not permitted to rely on the bill of costs in determining the fee amount and instead needed to go through various factors to determine the reasonableness of the fees. Alcorn, however, has failed to adequately present and develop this argument for this Court's review. Alcorn did not raise it in the statement of questions presented in his appellate brief, and only otherwise mentioned it in a fairly cursory footnote at the end of that brief. See *Maple BPA, Inc v Bloomfield Charter Twp*, 302 Mich App 505, 517; 838 NW2d 915 (2013); *Busch v Holmes*, 256 Mich App 4, 12; 662 NW2d 64 (2003). TCY correspondingly did not brief the issue in response. Alcorn then attempted to use his reply brief to elaborate on the argument, even though such briefs are meant for rebuttal. See *Equity Funding, Inc v Village of Milford*, 342 Mich App 342, 348; 994 NW2d 859 (2022). And at no point has Alcorn explained why the amount of fees awarded was, in fact, unreasonable, or how the analysis he claims the court should have performed might have properly shown as much. See *Greater Bethesda Healing Springs Ministry v Evangel Builders & Constr Managers, LLC*, 282 Mich App 410, 413; 766 NW2d 874 (2009). Given these circumstances, we deem the argument abandoned and decline to address it further.